Opinion
 

 MASTERSON, J.
 

 Staff Builders, Inc. (Staff Builders) appeals an order of the superior court confirming an arbitration award. Because the trial court did not apply the correct standard in reviewing the arbitration award, we reverse.
 

 Background
 

 Staff Builders acquires, franchises, and manages home health care businesses. Glen Lindenstadt (Lindenstadt), who does business as The Lindenstadt Company (TLC), assisted Staff Builders in its acquisition efforts. From 1991 until 1995, TLC and Staff Builders entered into 25 to 30 written agreements referencing the possible acquisition of over 100 businesses.
 

 By way of example, an agreement dated March 25, 1993, listed 11 potential acquisition candidates, including Homelife Nursing, Inc., and Kay-lee Home Care. The agreement acknowledged that TLC “has brought th[ese] possible acquisition/franchise candidate(s) to [Staff Builders’] attention.” The agreement further provided that “[i]f [Staff Builders] consummates an acquisition . . . with respect to the[se] company(ies) and/or business(es)
 
 *886
 
 . . . and first called to [Staff Builders’] attention by TLC within 36 months from the date entered below, [Staff Builders] will pay TLC a Finder Fee [based on] the Present Value of the Gross Aggregate Consideration.” Staff Builders also agreed to “list TLC in all acquisition agreements and final closing documents as the Finder/Initiator . . . Finally, the parties agreed that any controversy relating to the agreement would be resolved through binding arbitration and that the prevailing party would be entitled to attorney fees.
 
 [1]
 

 In August 1995, TLC initiated arbitration proceedings against Staff Builders, seeking the payment of finder’s fees in connection with Staff Builders’ acquisition of four businesses: Homelife Nursing, Inc., Kaylee Home Care, Comprehensive Services, and Albert Gallatin Visiting Nurse Association, Inc. Staff Builders defended the claims on the ground that TLC had functioned as an unlicensed real estate broker and was therefore statutorily barred from seeking any compensation under certain sections of the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.). (See
 
 id.,
 
 §§ 10130, 10131, 10136.)
 
 [2]
 
 TLC argued that it had served as a “finder,” not a broker.
 
 [3]
 
 Lindenstadt admitted that he did not have a real estate broker’s license.
 

 In early 1996, the arbitrator conducted two days of hearings. On April 21, 1996, she issued an award, concluding that TLC was entitled to finder’s fees
 
 *887
 
 on two of the transactions (Homelife Nursing, Inc., and Comprehensive Services) but not on the other two (Kaylee Home Care and Albert Gallatin Visiting Nurse Association, Inc.). The award required that Staff Builders pay TLC $125,000 in finder’s fees, $20,519 in interest, and $6,200 in attorney fees.
 

 In her six-page award, the arbitrator described the evidence produced at the hearings and the basis for her decision. As to the transactions involving Kaylee Home Care and Albert Gallatin Visiting Nurse Association, Inc., the arbitrator found that Lindenstadt had acted as an unlicensed broker and that the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.) precluded TLC from receiving any payment for those deals. With respect to the transactions involving Comprehensive Services and Homelife Nursing, Inc., the arbitrator concluded that Lindenstadt had not acted as a broker and that TLC was entitled to finder’s fees; as to these transactions, the award recited:
 

 “Lindenstadt testified that he obtained Comprehensive’s financial reports to forward to Staff Builders and also ‘facilitated meetings, kept discussions on track.’ Lindenstadt’s testimony as to his activities was vague and conclusory and the Arbitrator gave it little credence .... Staff Builders’ [president] Steve Savitsky testified that Lindenstadt had no involvement in negotiating terms of the Comprehensive Services deal. The Arbitrator makes the factual finding that Mr. Lindenstadt’s activities were as testified by Mr. Savitsky and thus included no prohibited ‘broker’ activities precluding enforcement of the contract. Therefore the fee agreement relating to Comprehensive Services is enforceable.
 

 “Mr. Lindenstadt testified that his initial contact with Homelife [Nursing, Inc.] was with a Mr. Gleason, from whom he got an expression of interest and a purchase price which he passed on to Staff Builders, along with information about the company.
 

 “Mr. Lindenstadt testified that he spoke to Mr. Gleason at least 5-10 times over the course of 1993 to see how things were progressing and also discussed Homelife with Staff Builders several times asking whether they were pursuing the opportunity. . . . Mr. Lindenstadt testified that he did ‘follow up’ and had ‘numerous conversations’ (5-10) with Gleason re Homelife throughout 1993, but did not ‘negotiate’ for Staff Builders.
 

 “Mr. Gleason contradicted Mr. Lindenstadt, stating that he had never spoken to Lindenstadt and would recall 5-10 conversations if they had
 
 *888
 
 occurred. Mr. Gleason also testified that such conversations could not have occurred as he would not discuss acquisition matters with anyone, had no authority to do so, and would forward such calls to Homelife CEO Ed Schrum. ['JO Ed Schrum testified that Gleason never reported any such conversations with Lindenstadt.[
 
 4
 
 ] [<JQ Mr. Savitsky testified that to his knowledge, Lindenstadt had nothing to do with the Homelife transaction. [U John Northway testified that it was he who brought the Homelife transaction to fruition, not Lindenstadt. Mr. Savitsky agreed.
 

 “The Arbitrator believed Mr. Gleason’s and Schrum’s testimony as to the nonexistence of these conversations as more credible than Mr. Lindenstadt’s. Mr. Lindenstadt’s lack of recall about the specifics of the conversations, combined with Mr. Gleason’s and Schrum’s compelling testimony that they did not occur, leads the Arbitrator to believe that the conversations indeed did not occur. Therefore there is no factual basis for finding that Mr. Lindenstadt engaged in prohibited brokering activities. The contract with respect to Homelife is enforceable.”
 

 In May 1996, Lindenstadt filed a petition in the trial court to confirm the arbitration award. Staff Builders filed papers opposing the petition and submitted evidence in support of its contention that Lindenstadt had acted as an unlicensed broker. Staff Builders argued that the trial court was obligated to undertake a de novo review of the evidence to determine whether the arbitration award was based on illegal contracts or transactions—those where Lindenstadt had acted as a broker. At oral argument, the trial court stated that it would not review the illegality issue de novo because the parties had already litigated that issue in the arbitration, and the arbitrator had decided it. By minute order dated June 21, 1996, the trial court granted the petition “for the reasons stated on the record as fully reflected in the notes of the official court reporter . . . .” The court also awarded Lindenstadt attorney fees and costs incurred in seeking confirmation of the award. Staff Builders filed a timely appeal from the order.
 

 Discussion
 

 Staff Builders contends that the trial court should have reviewed the evidence de novo to determine whether the arbitration award was based on
 
 *889
 
 illegal agreements or transactions. We agree. Accordingly, we remand the case to the trial court so that it can evaluate the evidence under the correct standard of review.
 

 Staff Builders further argues that, because Lindenstadt acted as a broker on
 
 some
 
 of the transactions, the finder’s exception to the licensing requirement cannot be applied to any of the other transactions. Under this view, the arbitration award would have to be vacated even if Lindenstadt acted as a finder on the two transactions for which the arbitrator awarded compensation. We reject this contention. On remand, the trial court should confirm the award if it determines that Lindenstadt acted as a finder on those transactions.
 

 A.
 
 Standard of Review of the Arbitration Award
 

 “In general, ‘. . . courts may not interfere with arbitration awards. Courts may not examine the merits of the controversy, the sufficiency of the evidence supporting the award, or the reasoning supporting the decision. ... A court may not set aside an arbitration award even if the arbitrator made an error in law or fact. . . .’”
 
 (Schlessinger
 
 v.
 
 Rosenfeld, Meyer & Susman
 
 (1995) 40 Cal.App.4th 1096, 1109 [47 Cal.Rptr.2d 650].)
 

 However, in
 
 Loving & Evans
 
 v.
 
 Blick
 
 (1949) 33 Cal.2d 603 [204 P.2d 23]
 
 (Loving & Evans),
 
 the Supreme Court recognized a narrow exception to the general rule. In that case, a dispute arose on a construction project between the property owner and the contractors over the amount due the contractors. Pursuant to a provision in the parties’ contract, the matter was submitted to binding arbitration. The property owner argued that the contractors were not entitled to any recovery because they were not properly licensed. (See Bus. & Prof. Code, §§ 7026, 7028, 7031.)
 
 [5]
 
 The arbitrator implicitly rejected that argument and rendered an award in favor of the contractors. (33 Cal.2d at pp. 604-605.) The contractors then petitioned the superior court to confirm the award. The property owner opposed confirmation on the ground that the contractors had not been licensed, and the parties’ contract was therefore illegal and unenforceable.
 
 (Id.
 
 at pp. 605-606.) The trial court rejected that
 
 *890
 
 argument and confirmed the award. The Supreme Court reversed, holding that the trial court should have independently determined whether the parties’ contract was illegal.
 
 {Id.
 
 at pp. 606-615.)
 

 As the high court explained: “[T]he rules which give finality to the arbitrator’s determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator’s award. When so raised, the issue is one for judicial determination upon the evidence presented to the trial court, and any preliminary determination of legality by the arbitrator, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, should not be held to be binding upon the trial court.
 

 “The foregoing conclusion is entirely in harmony with the provision of section 1288 of the Code of Civil Procedure [now section 1286.2], which recites the grounds upon which the trial court ‘must make an order vacating the award.’ Section (d) thereof specifies that the award must be vacated ‘where the arbitrators exceeded their powers, . . . .’It seems clear that the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise. ... In the absence of a valid contract no such rights can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights. The question of the validity of the basic contract being essentially a judicial question, it remains such whether it is presented in a proceeding ‘for an order directing . . . arbitration’ under section 1282 of the Code of Civil Procedure [now section 1281.2] or in a proceeding ‘for an order confirming’ or ‘vacating an award’ under sections 1287 and 1288 of said code [now sections 1285, 1286, and 1286.2]. If it is presented in a proceeding under said section 1282 and it appears to the court from the uncontradicted evidence that the contract is illegal, the court should deny the petition ‘for an order directing the parties to proceed to arbitration.’ If it is presented in a proceeding under said section 1287 or 1288 and similar uncontradicted evidence is offered, the court should deny confirmation and should vacate any award granting relief under the illegal contract upon the ground that the arbitrator exceeded his powers in making such award.[
 
 6
 
 ]
 

 “Section 1281 of the Code of Civil Procedure, providing for submission to arbitration of ‘any controversy . . . which arises out of a contract,’ does not
 
 *891
 
 contemplate that the parties may provide for the arbitration of controversies arising out of contracts which are expressly declared by law to be illegal and against the public policy of the state. So it is generally held that ‘a claim arising out of an illegal transaction is not a proper subject matter for submission to arbitration, and that an award springing out of an illegal contract, which no court can enforce, cannot stand on any higher ground than the contract itself.’ . . .
 

 “. . . [W]hen a party seeks to use the processes of the courts to obtain confirmation of an arbitrator’s award, and an issue is raised concerning the alleged illegality of the contract upon which the award is based, the trial court is the tribunal which must determine such issue of illegality upon the evidence presented to it. If this were not the rule, courts would be compelled to stultify themselves by lending their aid to the enforcement of contracts which have been declared by statute to be illegal and void. A party seeking confirmation cannot be permitted to rely upon the arbitrator’s conclusion of legality for the reason that paramount considerations of public policy require that this vital issue be committed to the court’s determination whenever judicial aid is sought.”
 
 (Loving & Evans, supra,
 
 33 Cal.2d at pp. 609-614, citations omitted.)
 

 Similarly, in
 
 All Points Traders, Inc.
 
 v.
 
 Barrington Associates
 
 (1989) 211 Cal.App.3d 723 [259 Cal.Rptr. 780], an investment banking firm (Barrington) agreed to assist a company (All Points) in finding an investor to purchase its stock. After the sale of All Points’ stock, Barrington initiated binding arbitration pursuant to the parties’ written agreement, seeking payment of a commission. All Points argued in the arbitration that, because Barrington did not possess a real estate broker’s license, it was not entitled to any compensation.
 
 (Id.
 
 at p. 727.) The arbitrator found in favor of Barrington and awarded it a commission. The superior court confirmed the award. The Court of Appeal reversed, concluding that Barrington needed a real estate broker’s license to assist All Points in the sale of its stock.
 
 (Id.
 
 at pp. 728-735.) Absent the license, the parties’ agreement was illegal under the Real Estate Law, and the arbitration award could not be based on such an agreement.
 
 (Id.
 
 at pp. 735-738.) As the Court of Appeal stated: “Inherent in the arbitration award granting Barrington a commission for its involvement in the sale of All Points is the finding that the underlying contract was legal and enforceable. However, the issue of illegality is one for judicial determination upon the evidence presented to the trial court, and the arbitrator’s
 
 *892
 
 finding, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, is not binding on the trial court.”
 
 (Id.
 
 at p. 737, citing
 
 Loving & Evans, supra,
 
 33 Cal.2d at p. 609.)
 

 More recently, in
 
 Moncharsh
 
 v.
 
 Heily & Blase, supra,
 
 3 Cal.4th 1, the Supreme Court reaffirmed the principles established in
 
 Loving & Evans
 
 and approved the decision in
 
 All Points Traders, Inc.
 
 v.
 
 Barrington Associates, supra,
 
 211 Cal.App.3d 723.
 
 (Moncharsh, supra,
 
 3 Cal.4th at pp. 31-32.) As the
 
 Moncharsh
 
 court pointed out, “Both
 
 Loving & Evans . . .
 
 and
 
 All Points Traders . . .
 
 permitted judicial review of an arbitrator’s ruling where a party claimed the entire contract or transaction was illegal.” (3 Cal.4th at p. 32.) The high court further stated: “Although we recognized the general rule [in
 
 Loving & Evans]
 
 that the merits of a dispute before an arbitrator are not subject to judicial review, ‘the rules which give finality to the arbitrator’s determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator’s award.’ ” (3 Cal.4th at p. 31, italics omitted; accord, Knight et al„ Cal. Practice Guide: Alternative Dispute Resolution,
 
 supra,
 
 ¶¶ 5:465 to 5:471, pp. 5-129 to 5-130.)
 
 [7]
 

 Here, contrary to the trial court’s conclusion, it did not matter that Staff Builders had submitted the illegality issue to the arbitrator or that the arbitrator had decided that issue. “[T]he trial court is the tribunal which must determine such issue of illegality upon the evidence presented to it”
 
 (Loving & Evans, supra,
 
 33 Cal.2d at p. 614), and “. . . any preliminary determination of legality by the arbitrator . . . [is] not . . . binding upon the trial court”
 
 (id.
 
 at p. 609). In seeking to confirm the arbitration award, Lindenstadt “cannot be permitted to rely upon the arbitrator’s conclusion of legality”
 
 (id.
 
 at p. 614) since “. . . it would violate public policy to allow a party to do through arbitration what it cannot do through litigation”
 
 (Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.
 
 v.
 
 100 Oak Street
 
 (1983) 35
 
 *893
 
 Cal.3d 312, 316, fn. 2 [197 Cal.Rptr. 581, 673 P.2d 251]). As in
 
 All Points Traders, Inc.
 
 v.
 
 Barrington Associates, supra,
 
 211 Cal.App.3d 723, the trial court must determine whether the Real Estate Law precludes confirmation of the award. If Lindenstadt acted as an unlicensed real estate broker on a transaction, the arbitrator exceeded her powers (Code Civ. Proc., § 1286.2, subd. (d)) to the extent she awarded compensation for that work.
 

 We therefore remand the case so that the trial court can independently decide whether Lindenstadt’s claims were based on illegal contracts or transactions.
 
 [8]
 

 B.
 
 The Finder’s Exception
 

 Staff Builders argues before this court, as it did before the arbitrator and the trial court, that the finder’s exception should not be applied on a transaction-by-transaction basis but, instead, should be available only if Lindenstadt acted as a finder on all transactions. We reject this proposition.
 

 The Supreme Court has explained the rationale for the finder’s exception as follows: “One who merely introduces two parties to a real estate transaction, whether or not he solicits those persons, does not need to be as knowledgeable about real estate transactions as a licensed broker, unless, of course, he participates in the negotiations. The finder of loans is an individual who is familiar with finance and who knows who is available to lend money under what terms and at what time. Unless he enters into the negotiation of the transaction or other activities beyond introduction, he need not be well versed in real estate law or in real estate economics and appraising.
 

 “It is true that the finder’s exception presents a seeming anomaly in our law. In general, an unlicensed individual may recover an agreed compensation where he merely finds a buyer, seller, lender, or borrower, but if in addition to finding such person he goes further and helps to conclude the transaction by taking part in negotiating the details of the transaction, compromising or composing differences between the parties, by way of example, he may not recover the agreed compensation.
 

 “Nevertheless, when viewed in the light of the competing public policies the finder’s exception is not anomalous. Fundamental to our law is the basic
 
 *894
 
 principle that persons should perform their contracts, and when they breach their agreements, action should ordinarily lie to enforce contractual duties. On the other hand, the promotion of competency and integrity in those called upon by the public to perform complex duties involving trust is a salutary purpose, and the policy underlying the licensing statutes must be given full effect.
 
 Neither considerations of competency nor of trust are of importance where the undertaking is merely to seek out, locate, find and introduce a buyer, seller, borrower, or lender to his counterpart or where negotiations and completion of the transaction are left completely to the principals. By enforcing the promise to pay a finder’s fee we give effect to the policy of enforcement of contracts in cases where the policy underlying the licensing statute does not directly apply.” (Tyrone
 
 v.
 
 Kelley
 
 (1973) 9 Cal.3d 1, 11-12 [106 Cal.Rptr. 761, 507 P.2d 65], italics added; see also
 
 Rees
 
 v.
 
 Department of Real Estate
 
 (1977) 76 Cal.App.3d 286, 295 [142 Cal.Rptr. 789] [finder’s exception applies “where one simply acts as an intermediary or middleman in finding and introducing two parties to a real estate transaction”];
 
 Zappas
 
 v.
 
 King Williams Press, Inc.
 
 (1970) 10 Cal.App.3d 768, 775 [89 Cal.Rptr. 307] [court should view alleged finder’s activities in realistic manner to determine the number of transactions in which he may have improperly functioned as a broker].)
 

 The record in this case indicates that Lindenstadt was involved in locating several acquisition candidates for Staff Builders over the years. He may have acted as an unlicensed broker on
 
 some
 
 of those transactions. However, the purpose of the broker’s licensing statute—the promotion of competency and trust—is not served by denying Lindenstadt a finder’s fee on transactions where he merely introduced the principals (Staff Builders and the acquired entity) to one another, and Staff Builders thereafter negotiated the acquisition. The goal of the licensing law is adequately served by denying Lindenstadt any compensation on those transactions where he crossed the line from finder to broker. Moreover, by applying the finder’s exception in this way, Staff Builders will justifiably be required to perform its contractual obligation—to pay a finder’s fee—on transactions where Lindenstadt actually functioned as a finder. Thus, on remand, the trial court should apply the finder’s exception on a transaction-by-transaction basis in determining whether to confirm the arbitration award.
 
 [9]
 

 
 *895
 
 Disposition
 

 The order is reversed. On remand, the trial court shall conduct a de novo review of the evidence to determine whether plaintiff violated the Real Estate Law (Bus. & Prof. Code, § 10000 et seq.) and shall apply the finder’s exception to that law on a transaction-by-transaction basis in ruling on the petition to confirm the arbitration award. The parties are to bear their own costs on appeal.
 

 Spencer, P. J., and Vogel (Miriam A.), J., concurred.
 

 [1]
 

 The parties entered into similar agreements concerning the possible acquisition of two other companies, Comprehensive Services and Albert Gallatin Visiting Nurse Association, Inc.
 

 [2]
 

 “A real estate broker ... is a person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: (a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property or a business opportunity.” (Bus. & Prof. Code, § 10131, subd. (a).) “It is unlawful for any person to engage in the business, act in the capacity of, advertise or assume to act as a real estate broker or a real estate salesman within this state without first obtaining a real estate license from the department [of real estate].”
 
 (Id.,
 
 § 10130.) Further, “[n]o person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose.”
 
 (Id.,
 
 § 10136.)
 

 [3]
 

 " '[T]he rule is well established that one who simply finds and introduces a prospective [buyer] to a person who wishes to [sell] his property need not be licensed by the state in order to recover a commission for his services. Such an intermediary is protected by the so-called “finder’s” exception to the real estate licensing act.’ . . . [H The line between brokers and finders is based on whether the person in question has engaged in any negotiating to consummate the transaction. . . . ‘The finder is a person whose employment is limited to bringing the parties together so that they may negotiate their own contract. . . .’”
 
 (Preach
 
 v.
 
 Monter Rainbow
 
 (1993) 12 Cal.App.4th 1441, 1452 [16 Cal.Rptr.2d 320], citations omitted.)
 

 [4]
 

 At this point in the award, the arbitrator stated as follows in a footnote: “Mr. Schrum testified to one or two prior conversations with Lindenstadt in 1992 or 1993 which did not lead anywhere. Lindenstadt cannot recall the timing of these conversations but seems to agree that they may have occurred in 1992. Mr. Lindenstadt also testified that these conversations led to nothing in 1992. Thus the dispute relates only to the conversations Lindenstadt purports to have had with Mr. Gleason.”
 

 [5]
 

 At the time of the arbitration in
 
 Loving & Evans,
 
 Business and Professions Code section 7031 provided: “No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any
 
 action in any court of this State
 
 for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract.” (Stats. 1939, ch. 37, § 1, p. 384, italics added.) The phrase “action in any court of this State” includes a proceeding in superior court to confirm an arbitration award.
 
 (Loving & Evans, supra,
 
 33 Cal.2d at pp. 611-613;
 
 Franklin
 
 v.
 
 Nat. C. Goldstone Agency
 
 (1949) 33 Cal.2d 628, 632-633 [204 P.2d 37].) A similar prohibition is contained in the Real Estate Law. (See Bus. & Prof. Code, § 10136.)
 

 [6]
 

 Lindenstadt does not contend that Staff Builders should have sought a judicial determination of the illegality issue before the arbitration commenced or that Staff Builders failed to properly object to the arbitration. (Cf.
 
 Moncharsh
 
 v.
 
 Heily & Blase
 
 (1992) 3 Cal.4th 1, 29-31 [10 Cal.Rptr.2d 183, 832 P.2d 899] [discussing waiver of illegality claim];
 
 Bayscene Resident Negotiators
 
 v.
 
 Bayscene Mobilehome Park
 
 (1993) 15 Cal.App.4th 119, 129 [18 Cal.Rptr.2d 626] [same];
 
 South Bay Radiology Medical Associates
 
 v.
 
 Asher
 
 (1990) 220 Cal.App.3d 1074, 1079-1081 [269 Cal.Rptr. 15] [same]; Knight et al., Cal. Practice Guide: Alternative Dispute
 
 *891
 
 Resolution (The Rutter Group 1996) ¶¶ 5:136 to 5:141, pp. 5-38 to 5-39 [same].) Consequently, we do not address that subject.
 
 (See MST Farms
 
 v.
 
 C. G. 1464
 
 (1988) 204 Cal.App.3d 304, 306 [251 Cal.Rptr. 72].)
 

 [7]
 

 Our discussion has been limited to the standard of review that governs a
 
 trial court’s
 
 review of an arbitrator’s decision where one of the parties claims that the entire contract or transaction underlying the award is illegal. On appeal from an order confirming an arbitration award, we review the trial court’s order (not the arbitration award) under a de novo standard. (See
 
 Advanced Micro Devices, Inc.
 
 v.
 
 Intel Corp.
 
 (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994];
 
 Stirlen
 
 v.
 
 Supercuts, Inc.
 
 (1997) 51 Cal.App.4th 1519, 1527 [60 Cal.Rptr.2d 138];
 
 Brookwood
 
 v.
 
 Bank of America
 
 (1996) 45 Cal.App.4th 1667, 1670 [53 Cal.Rptr.2d 515]; see also
 
 Beasley
 
 v.
 
 Wells Fargo Bank
 
 (1991) 235 Cal.App.3d 1383, 1394-1395 [1 Cal.Rptr.2d 446] [discussing application of de novo standard to findings based on witness credibility].) To the extent that the trial court’s ruling rests upon a determination of disputed factual issues, we apply the substantial evidence test to those issues.
 
 (Cochran
 
 v.
 
 Rubens
 
 (1996) 42 Cal.App.4th 481, 484-486 [49 Cal.Rptr.2d 672];
 
 Engineers & Architects Assn.
 
 v.
 
 Community Development Dept.
 
 (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800].)
 

 [8]
 

 In determining the illegality question, the trial court should consider all of the admissible evidence submitted to it regardless of whether that evidence was before the arbitrator. (See
 
 Loving & Evans, supra,
 
 33 Cal.2d at pp. 605, 614-615.) Of course, the trial court should also consider the arbitration award itself, including the testimony and other evidence described therein.
 
 (Ibid.)
 

 [9]
 

 Because we are reversing the trial court’s order and remanding the case for further proceedings, we do not decide whether either party is entitled to attorney fees on appeal. The resolution of that issue must necessarily await the outcome of the proceedings on remand since, at this point, there is no “prevailing party” in the case. At an appropriate time after remand, the trial court should determine if either party is entitled to fees for this appeal and, if so, the amount of the award.