Filed 11/3/14  Shea Homes Ltd. v. Loeffler CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHEA HOMES LIMITED PARTNERSHIP, Plaintiff and Respondent, v. JENNIFER LOEFFLER, Defendant and Appellant. | G049358 (Super. Ct. No. 30-2012-00578921) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Motion for Sanctions.  Motion Denied.  Judgment affirmed.

Steven L. Rader for Defendant and Appellant.

Palumbo Bergstrom, Julia Bergstrom and Scott M. Halberstadt for Plaintiff and Respondent.

\*          \*          \*

Defendant Jennifer Loeffler appeals from a judgment entered after the trial court confirmed an arbitration award in favor of plaintiff Shea Homes Limited Partnership.

Defendant raises several arguments: there was insufficient evidence she agreed to arbitrate; the arbitration agreement was unconscionable; she did not waive her objections to the arbitration agreement or to the award itself; the arbitrator exceeded his powers by not correctly determining her claim under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA); the written award did not satisfy the FEHA requirements; the trial court did not sufficiently review the award to determine whether the arbitrator complied with FEHA; she did not get a hearing on the merits; and finally, the arbitrator did not make sufficient disclosures to ensure belief in his impartiality.

Plaintiff filed a motion for sanctions, claiming the appeal is frivolous.

We find no error and affirm the judgment. We also deny the motion because the appeal was not frivolous.

## FACTS[1] AND PROCEDURAL HISTORY

In May 2011 the parties executed a Purchase and Sale Agreement and Joint Escrow Instructions (Agreement) for defendant's purchase of a home in Aliso Viejo (Property) from plaintiff for $714,900. Escrow closed in July.

The Agreement contained an alternate dispute resolution (ADR) provision, that included procedures for arbitration. One section provided: "POST-CLOSING DISPUTE RESOLUTION AND LIMITATION OF REMEDIES: Any disputes between Buyer and Seller arising after Close of Escrow, regardless of whether any aspect of the

---

[1] The facts are taken primarily from the Award and the Statement of Decision. The Award provides that if its statement of facts conflicts with those proffered by a party it is because of the arbitrator's assessment of credibility and weight of the evidence presented.

2

dispute arises from any act or omission committed or omitted prior to Close of Escrow, relating to or arising out of this Agreement, or to the use, condition, operation, design, surveying, grading, development, construction or installation of the Property and any improvements, landscaping or personal property located thereon, shall be resolved in accordance with this Section 23 and the procedures set forth in the Title 7 Master Declaration.  The provisions of this Section 23 shall survive Close of Escrow. . . .  [¶] . . . [¶] . . . If the Formal Claim Process [an alternative non-adversarial procedure as authorized by Civil Code section 914] does not result in a resolution of the dispute/action or if the dispute/action is not subject to the Formal Claim Process, the dispute/action shall be resolved through the Binding Dispute Resolution Procedures set forth in Section 23.4. Buyer, by initialing below, acknowledges that Buyer has received this notice." Defendant's initials are directly below this provision.

The Binding Dispute Resolution Procedures in section 23.4 explain that the procedures are set out in Exhibit 7 to the Title 7 Master Declaration.  Directly below that section, the following is set out:  "THE BINDING DISPUTE RESOLUTION PROCEDURES DO NOT INVOLVE A JURY AND BUYER AND SELLER HEREBY EXPRESSLY WAIVE ANY RIGHT TO A JURY."  Defendant's initials are right below this sentence.

At the end of the Agreement it states that the Title 7 Master Declaration, defined as an "Additional Document," is attached as Exhibit C.  On the same page, just a few lines below, defendant signed the Agreement.

Exhibit C follows within six pages of the main portion of the Agreement. As shown on its title page, the eight-page document is entitled "Master Declaration for Title 7 & Dispute Resolution" (capitalization omitted; Master Declaration).  It states it "is being provided to Buyer concurrently with this [Agreement]."  The document was recorded in September 2007.

3

The Master Declaration provides procedures for the Formal Claim Process and, if that does not resolve the dispute, for Binding Dispute Resolution. The procedures for Binding Dispute Resolution are explained in Exhibit 7 to the Master Declaration.

The Binding Dispute Resolution Procedures set out the nature of the disputes subject to the process, the parties subject to the procedures, a requirement for mediation prior to arbitration, and the final remedy of arbitration.

The specifics of the arbitration process are also detailed in the document. The arbitration is to be governed by the Federal Arbitration Act (9 U.S.C. § 1; FAA) and conducted by JAMS. It provides for limited discovery. Plaintiff is required to advance costs but final costs are to be allocated by the arbitrator after the hearing. The parties are to bear their own attorney fees. The arbitrator is required to issue a written statement of decision and the decision is to be binding.

The final page of Exhibit 7 states the following, in all caps and bold:

"Notice: . . . [B]y taking title to the property, homeowner/association is agreeing to have any dispute arising out of the matters included in these Binding Dispute Resolution Procedures decided by neutral arbitration as provided by the [FAA] and homeowner/association is giving up any rights homeowner/association might possess to have the dispute litigated in a court or jury trial[, and] to discovery and appeal, unless those rights are specifically included in these Binding Dispute Resolution Procedures provision. . . . Homeowner/association's agreement to this arbitration provision is voluntary." There is no other text on this page.

In addition to those documents, plaintiff provided a "Notice of Non-Adversarial Procedure and Individual Declaration of Covenants for Title 7 & Dispute Resolution" (capitalization omitted; Individual Declaration), making the Master Declaration applicable not only to the development but also to defendant's real property. Defendant initialed a provision stating she knew of and had received a copy of the Master Declaration and knew the Formal Claim Process affected her legal rights. The Individual

4

Declaration required the parties to abide by the Formal Claim Process and Binding Dispute Resolution Procedures in the Master Declaration. Defendant signed this document.

The Agreement required defendant to landscape her side yard. Plaintiff declined her request it undertake that as part of the sale of the Property. Later, at defendant's request, plaintiff provided her with the names of three landscapers. Defendant selected the company landscaping her neighbor's yard. After disputes arose and defendant requested plaintiff mediate the disputes, defendant and the landscapers terminated any relationship.

Shortly after she moved into the home, defendant made a number of complaints of defects. Plaintiff corrected more than 20 items, including claims not under warranty. It never refused to respond to a warranty claim. Plaintiff's expert witness in the arbitration testified most of defendant's complaints had no merit. Defendant proffered no credible rebuttal evidence on this issue.

Defendant began the ADR process when she served a Notice of Claim pursuant to the Agreement and the recorded covenants, conditions, and restrictions (CC&R's). She maintained plaintiff had induced her to enter into a contract with a landscape contractor and/or had interfered with that contract and had violated FEHA. She also alleged there were construction defects.

After an unsuccessful mediation, defendant filed a demand for arbitration, claiming plaintiff was required to install landscape and correct alleged warranty problems. She also sought property damages and damages for loss of use of the property, retaliation, discrimination, and emotional distress. JAMS appointed an arbitrator, Retired Superior Court Judge Jonathon Cannon, after the parties could not jointly select one. Because the parties did not agree as to the scope of the arbitration, they submitted briefs to the arbitrator for his decision. Defendant argued plaintiff should be required to pay all

5

costs of arbitration and claimed the arbitration provision would be unconscionable if it was interpreted to require her to pay any costs other than her court filing fee.

Thereafter, defendant asserted additional construction defects and demanded further mediation. When that proved unsuccessful those claims were added to the arbitration.

Before the arbitration hearing began, defendant served a notice of rescission, offering to restore title to the Property in exchange for almost $848,000. Plaintiff accepted the offer to rescind, reserving the right to litigate the amount necessary to restore defendant to her original position.

At the arbitration, direct testimony was submitted via declaration and at the hearing the parties conducted cross-examination of the declarants. After the original hearing and further briefing as to rescission, the parties presented closing arguments. At that hearing, defendant argued her FEHA claim was separate and she was entitled to emotional distress and punitive damages and attorney fees. After taking that claim under submission, the arbitrator ultimately awarded defendant just under $750,000, comprised of the purchase price and sums defendant spent for property insurance, homeowner association dues, property inspection and improvements she made to the Property (Award).

After several iterations of escrow instructions to implement the rescission, the parties finally agreed plaintiff would pay the sum awarded before defendant vacated the Property so defendant would have time to purchase a new residence. Subsequently, the instructions were amended to substitute a different piece of property to be purchased by defendant. The grant deed for the Property executed by defendant and plaintiff's payment were deposited into escrow and the grant deed was recorded.

The instructions gave defendant 10 days from the close of escrow on her new home to vacate the Property. On the tenth day, defendant gave plaintiff written notice escrow on her new residence had not closed. Defendant also advised plaintiff she

6

disputed the amount of the arbitration award and would not leave the Property until she was paid an additional almost $74,000.

At that point plaintiff filed a petition to confirm the Award (Petition). Defendant filed a response seeking to dismiss the Petition, or vacate or correct the Award (Request to Vacate).

After hearing, the trial court granted the Petition and ordered plaintiff to prepare a statement of decision. When defendant objected to the original statement plaintiff submitted, the court ordered plaintiff to prepare a new statement of decision, including a response to 27 questions defendant had submitted. Defendant objected to the revised statement. The court then ordered plaintiff to amend the statement to include a statement of facts and procedural history, which was done. At about that time defendant vacated the Property.

The court signed the final version of the statement of decision (Statement of Decision). It ordered defendant to convey title to the Property to plaintiff in substantially the original condition and plaintiff to pay to defendant the sum of $733,421. The parties were ordered to bear their own attorney fees and costs. No arbitration costs were reallocated. Finally, the court decided any cause of action, claim or defense not specifically discussed in the Statement of Decision failed due to lack of proof.

Subsequently, defendant filed a motion to set aside or correct the judgment, essentially making the same arguments as in the Request to Vacate. After hearing, the court denied the motion and entered judgment.

**DISCUSSION**

*1. Review of Arbitration Awards*

Based on the strong public policy in support of arbitration as a means to resolve disputes, courts generally do not review arbitration awards for factual or legal errors (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407), including sufficiency of the evidence or reasoning of the arbitrator (*Moncharsh v. Heily & Blase*

7

(1992) 3 Cal.4th 1, 11). In the vast majority of cases arbitration awards are final. (*Id*. at p. 10.)

There are limited grounds on which an arbitration award may be vacated, including where the "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).) The "merits" described in this section encompass all contested legal and factual issues before the arbitrator. (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 28.)

Within this statutory exception is a claim the award violated "'an explicit legislative expression of public policy.'" (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 37.) Although defendant does not clearly make the argument, because of the strong public policy underlying the statute (Gov. Code, § 12920 [housing discrimination based on disability violates public policy]), a FEHA claim falls within this limited exception. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 107.)

A trial court's review of an arbitrator's decision is de novo. (*Ahdout v. Hekmatjah*, *supra*, 213 Cal.App.4th at pp. 39-40.) "Generally, when faced with a petition to confirm or vacate an arbitration award, a court may not review the merits of the parties' controversy or claims that the arbitrator's decision is either legally or factually erroneous. [Citation.]" (*Jones v. Humanscale Corp*., *supra*, 130 Cal.App.4th at p. 409.) It must consider all admissible evidence the parties present, whether or not it was submitted to the arbitrator. (*Ahdout*, at pp. 39-40.) It must also take into account the award itself, including any evidence and testimony described therein. (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 893, fn. 8.)

"On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual

8

issues, we apply the substantial evidence test to those issues." (*Lindenstadt v. Staff Builders, Inc.*, *supra*, 55 Cal.App.4th at p. 892, fn. 7.) "[W]e presume the court found every fact and drew every permissible inference necessary to support its judgment. [Citation.]" (*Brown v. Wells Fargo Bank, NA* (2008) 168 Cal.App.4th 938, 953.)

Defendant, as the party moving to vacate the award, has the burden to show error. (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826.)

*2. Enforceability of Arbitration Provision*

Defendant contends the trial court erred for three reasons in finding the arbitration provision enforceable. First, it failed to determine whether she agreed to arbitrate. Second, the provision was unconscionable. Finally, the Agreement fails to comply with the font, typeface, and content requirements of Code of Civil Procedure section 1298. None of these arguments persuades.

*a. Agreement to Arbitrate*

As part of the Petition, plaintiff attached the Agreement and the other documents containing all of the ADR and arbitration provisions detailed above. Defendant's claim plaintiff included only the Agreement and the Individual Declaration is misleading. The Agreement incorporates all the documents containing the various arbitration clauses. Contrary to defendant's implication, there need not be a discrete "arbitration agreement" signed by defendant. She signed and initialed what was necessary.

Defendant argues plaintiff failed to show the "document" she purportedly signed was not incorporated into documents she did sign. It is unclear as to which document defendant refers. But in any event, the language of the documents attached to the Petition makes it clear those documents, including the Master Declaration, bound defendant. Provisions in those same documents, initialed or signed by defendant, stated she acknowledged the arbitration provisions and had received copies of the documents. Contrary to defendant's claim, this was evidence she knew of the terms of the arbitration

9

provisions. Thus, in filing the Petition, plaintiff met its burden of proof to show a written agreement to arbitrate. (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1220.)

>  b. *Unconscionability*

Defendant claims the arbitration provisions are also unenforceable because they are unconscionable. Unconscionability is a question of law, which we review de novo. (*Thompson v. Toll Dublin, LLC* (2008) 165 Cal.App.4th 1360, 1369.) Defendant has the burden to prove the provisions unconscionable. (*Pinnacle Museum Tower Assn v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)

There are two facets of unconscionability, procedural and substantive, and both must be proven. (*Pinnacle, supra*, 55 Cal.4th at p. 246.) "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."' [Citation.]" (*Ibid.*)

Here, whether or not the arbitration provision is procedurally unconscionable, which we do not decide, it is not substantively unconscionable. Defendant's three claims in that regard do not persuade.

Defendant first relies on *Thompson v. Toll Dublin, LLC, supra,* 165 Cal.App.4th 1360, where the court held the terms of an arbitration agreement similar to the one here unconscionable. This was because, in the capacity of builder and seller of the homes, the defendants "'would have no conceivable reason to institute legal proceedings against a homeowner after escrow closed, but virtually every claim the homeowners might raise . . . would be subject to arbitration.' [Citation.]" (*Id.* at p. 1373.) That may be, but it does not mean arbitration under those circumstances would

10

also inure to plaintiff's benefit. Further, this provision is not so one-sided as to shock the conscience.

Second, defendant argues plaintiff was not obliged to arbitrate prior to close of escrow unless she forfeited her deposit as liquidated damages. Defendant misreads this provision. It actually states that if buyer fails to purchase the property, and certain procedural requirements are met, whether seller is entitled to retain the deposit as liquidated damages will be arbitrated.

Finally, defendant points to a provision that plaintiff would not be required to arbitrate if a third party against whom plaintiff might have a claim was not joined. Even if this is a substantively unconscionable provision, which we do not consider, it does not infect the arbitration provisions as a whole. The term does not permeate the entire arbitration provision, has nothing to do with the issues at hand, and could be severed. (*Armendariz v. Foundation Health Psychcare Services, Inc*., *supra*, 24 Cal.4th at p. 122.)

### c. Code of Civil Procedure Section 1298

Finally, defendant argues the arbitration provisions are unenforceable because they did not comply with Code of Civil Procedure section 1298. That section prescribes certain language, font, and typeface requirements for arbitration clauses. Defendant's failure to set out those requirements or argue why the provisions at hand were invalid could operate as a forfeiture of her argument. (*Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 165.)

On the merits the contention fails because that section has been preempted by the FAA in transactions involving interstate commerce. (*Hedges v. Carrigan* (2004) 117 Cal.App.4th 578, 585. The arbitration clause provides the FAA is to govern and the sale involves commerce. (*Ibid.* [preemption applied to contract for purchase and sale of home, a "'transaction involving commerce'"].)

11

*3. FEHA Claim*

Defendant argues neither the arbitrator nor the trial court properly addressed her FEHA claim. She asserts the arbitrator exceeded his powers because he did not properly apply FEHA to her claims, did not issue a sufficient written award, and deprived her of a hearing on the merits. She maintains the trial court did not review the Award as to the FEHA decision. But, because defendant did not prove her FEHA claim, her arguments fail.

"In order to establish discrimination based on a refusal to provide reasonable accommodations, a party must establish that he or she (1) suffers from a disability as defined in FEHA, (2) the discriminating party knew of, or should have known of, the disability, (3) accommodation is necessary to afford an equal opportunity to use and enjoy the dwelling, and (4) the discriminating party refused to make this accommodation. [Citations.]" (*Auburn Woods I Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th 1578, 1592.) Disabilities are defined at length in Government Code sections 12926 and 12955.3.

The owner, i.e., the discriminating party, is defined as "the lessee, sublessee, assignee, managing agent, real estate broker or salesperson, or any person having any legal or equitable right of ownership or possession or the right to rent or lease housing accommodations, and includes the state and any of its political subdivisions and any agency thereof." (Gov. Code, § 12927, subd. (e).)

A review of the record reveals there is insufficient evidence to support some of the elements defendant claims. In her brief, defendant did not direct us to evidence of the nature of her alleged disability or show that it falls within the statutory definition of a disability. She points to no evidence offered at the arbitration hearing. Although the Award does not specifically discuss the FEHA issue, it provides that any claim not specifically mentioned in the Award failed for lack of proof. The Statement of Decision explains that, at the arbitration hearing, defendant presented live testimony and

12

written declarations in support of her claims, including her FEHA claim. It notes defendant did not present declarations from any medical expert. Defendant does not contest these findings.

As to the Petition, defendant directs us only to one page in her exhibits filed in the Request to Vacate. It refers to one of her notices of action, conclusorily claiming it requested a reasonable accommodation of her disability pursuant to FEHA.

On our own review of the record[2] we located defendant's declaration filed in support of her Request to Vacate. In it defendant states she has "a debilitating back injury" resulting from a car accident which necessitated several surgeries. As a result her physical activities are limited and she suffers from chronic pain and periods of anxiety.

The declaration further states that the Agreement required purchasers to install certain landscaping within nine months after they moved in. At some point defendant asked plaintiff if plaintiff would install the landscaping in exchange for defendant's "'incentive'" money allowed as part of the sale. Plaintiff declined but referred her to contractors. Although defendant tried to complete the landscaping, she was unable to because it caused her severe anxiety and interfered with her pain management. Thereafter, in September after close of escrow, she e-mailed plaintiff, describing the physical manifestations of her severe stress occasioned by her having to deal with the landscape contractor, and advised she could not complete her landscaping.

The declaration also explained that in October defendant provided to plaintiff a document from her doctor "stating that because of [her] medical condition [she] could not handle negotiating with and overseeing a landscape contractor." She

_____

[2] Defendant's failure to direct us to this evidence is a ground for forfeiting the issue. (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 ["'It is neither practical nor appropriate for us to comb the record on [a party's] behalf'"]; *Evans v. CenterStone Development Co.*, *supra*, 134 Cal.App.4th at pp. 166-167 [forfeiture on this basis].)

asked for mediation, seeking a resolution to accommodate her physical and mental condition, and also tried to resolve the matter with plaintiff and the landscaper.

Additionally, we also reviewed defendant's two Notices of Action, also contained in her Request to Vacate. The first states that plaintiff "refused without comment or explanation [defendant's] request for a reasonable accommodation for her own medical condition and/or her mother's medical condition – which request is hereby restated and renewed." The second states plaintiff "has already been provided with a written medical opinion stating that [defendant's] medical condition renders it impossible for her to negotiate with, engage, and oversee the work of trade contractors. [Plaintiff] must remedy its violations in a way which accommodates [defendant's] medical condition."

This is the extent of the evidence regarding defendant's purported disability. Defendant did not designate the trial transcript from the hearing on the Petition and it is not contained in our record.

This evidence is not enough to show defendant met her burden. The Award found defendant never asked for an accommodation based on a disability and plaintiff had no knowledge of any "claimed disability until these proceedings were well underway [*sic*]." We agree the record does not show defendant specifically asked plaintiff for an accommodation due to a disability. In addition, she has not sufficiently set out a legal argument to support her claim. Defendant even admits "the precise contours of [those] claims are not readily apparent from the record."

Further, defendant has not shown she suffers from a statutorily-defined disability. (See *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 47 [party must prove impairment is disability as defined in statute].) Moreover there is no evidence the doctor's note given to plaintiff described her medical condition, only that she had one. Thus, she has not shown plaintiff knew, or should have known of her alleged disability.

14

Then there is a serious question as to whether plaintiff was even required to offer an accommodation. The notifications and requests to plaintiff were made after close of escrow, so defendant, not plaintiff, owned the Property. In her brief, defendant makes a cursory statement that plaintiff had an "equitable power" to enforce the landscaping requirement since it was the declarant under the CC&R's, controlled the homeowner's association board of directors, and appointed the architectural review committee, thus making it an owner under the FEHA definition. She also points to a provision in the CC&R's that plaintiff could install landscaping at an owner's expense if an owner failed to do so. Therefore, defendant "thought" having plaintiff install the landscaping was a reasonable accommodation.

Defendant directs us to nothing in the record to support these factual claims and we cannot consider any evidence not in the record. (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 485.) Equally important, the argument is insufficiently developed to support a conclusion plaintiff is an owner for purposes of making an accommodation. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [failure to make reasoned legal argument forfeits claim].)

Without making a prima facie case, none of defendant's arguments has merit. The Award states defendant did not prove her case. This satisfied the requirement that in a FEHA case, the arbitrator "must issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusion on which the award is based." (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at pp. 106-107.) The basis of the decision is clear and the record supports the finding.

Likewise the Award disposes of defendant's claim the arbitrator exceeded his powers by misinterpreting FEHA. Without sufficient evidence, defendant's belief plaintiff had to coordinate installation of defendant's landscaping was a reasonable accommodation is of no moment.

15

And nothing supports defendant's claim she was deprived of a hearing on the merits at the arbitration. She was allowed to put on evidence and argue her case. That the arbitrator ruled against her does not negate this. Moreover, we do not review the Award, only the trial court's order. (*Lindenstadt v. Staff Builders, Inc.*, *supra*, 55 Cal.App.4th at p. 892, fn. 7.)

In the Statement of Decision, in response to several of defendant's questions, the trial court found any issue relating to FEHA was "not germane" because of the arbitrator's finding there was no evidence of a FEHA violation. This defeats defendant's claim the court failed to review the Award as to FEHA. Further, since the Statement of Decision explains the factual and legal grounds for the ruling, "'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' [Citation.]" (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1531.)

*4. Waiver*

Because we have reviewed defendant's arguments on the merits, we need not discuss her claims the court erred in finding she had waived them.

*5. Failure to Disclose*

Defendant briefly argues the arbitrator failed to disclose "his prior participation, along with [plaintiff's] counsel, as a 'panelist' at construction industry seminars jointly 'sponsored,' in part, by the law firm representing [plaintiff] . . . and [JAMS]." Defendant characterizes these seminars as activities conducted "obviously to further some share business objective" and refers to a preprinted form from JAMS that an unnamed arbitrator might have participated on a panel with an unnamed lawyer. She argues this was not an adequate disclosure and the court erred when it failed to vacate the award on that basis. We disagree.

16

First, the generalized description of what purportedly occurred lacks record references. As noted above, we may not consider anything outside the record. Without factual support, the argument fails.

Second, Code of Civil Procedure section 1281.9, subdivision (a) requires an arbitrator to "disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial . . . ." Plaintiff points to evidence in the record that the disclosure given was as follows: "Please note JAMS neutrals regularly engage in speaking engagements, CLEs, discussion groups, and other professional activities, and it is possible that a lawyer or law firm connected with this proceeding either attended, participated or was on a panel with the Arbitrator." Thus, before the arbitration, defendant knew of the possible connection and did not object.

Defendant does not direct us to anything in the record to support her characterization of the seminars as furthering some business objective. Further, she does not even suggest the arbitrator would reap some financial reward from participating as a panelist. "'"[O]rdinary and insubstantial business dealings'" arising from participation in the business or legal community do not necessarily require disclosure.' [Citations.]" (*Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 72.)

The trial court found there was "no evidence that the arbitrator failed to disclose a ground for disqualification." Based on our de novo review, we agree. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 385.)

*6. Motion for Sanctions*

Plaintiff filed a motion for sanctions, claiming the appeal was frivolous, both objectively and subjectively. (Code Civ. Proc., § 907; Cal. Rules of Court, rule 8.276(a); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649-650.) Under the objective standard, the merits of the appeal are considered from the perspective of a reasonable person, i.e., would one conclude the appeal is "totally and completely devoid

17

of merit." (*Flaherty*, at p. 649)  As to the subjective standard, we look to the motives of defendant and her lawyer.  (*Ibid*.)

Plaintiff argues the appeal is objectively without merit because defendant waived her right to appeal after accepting the sum awarded by the arbitrator, her appeal is merely "'sour grapes'" because she did not recover as much as she sought, and she did not meet her burden on appeal because she did not file a sufficient record.

In his declaration in opposition to the motion, defendant's counsel sets out his explanation of the legal basis for filing the appeal and his belief in its merit.

We are aware that a lawyer's subjective belief in the validity of an appeal is not the test.  But "[c]ounsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal.  An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 650.)  We are also cognizant of the need to "avoid a serious chilling effect on the assertion of litigants' rights on appeal." (*Ibid*.)

As discussed above, the appeal had no merit.  And failure to file the reporter's transcript bears its own penalty.  But we cannot say with confidence that no reasonable attorney would have filed it or that it had no merit whatsoever.

As to the subjective test, plaintiff contends the appeal was filed for purposes of delay, to attack plaintiff, the arbitrator, and the trial court, and as a catharsis after losing.

However, the record does not show the appeal is frivolous using a subjective standard.  There is no evidence defendant would gain anything from delay and, except for plaintiff's claim, nothing supports a conclusion she filed the appeal merely to harass him.  (*In re Marriage of Flaherty*, *supra*, 31 Cal.3d at p. 651.)  While it is true lack of merit can be evidence of an appellant's bad faith, we do not consider it so here.

18

**DISPOSITION**

The judgment is affirmed.  The motion for sanctions is denied.  Plaintiff is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


FYBEL, ACTING P. J.


IKOLA, J.