Filed 11/14/14  Sidler v. RJT Investment Services CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BARRY V. SIDLER et al., | |
| Plaintiffs and Appellants, | G048968 |
| v. | (Super. Ct. No. 30-2013-00635193) |
| RJT INVESTMENT SERVICES, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Charles Margines, Judge.  Request for judicial notice.  Request denied.  Judgment affirmed.

HamptonHolley, George L. Hampton IV and Colin C. Holley for Plaintiffs and Appellants.

McQueen & Ashman and James A. McQueen for Defendant and Respondent.

\*          \*          \*

Plaintiffs Barry V. Sidler (Barry) and BD Sidler, Inc. (Sidler) appeal from a judgment entered after the trial court confirmed an arbitration award in favor of defendant RJT Investment Services, Inc. Defendant, who purchased clients, goodwill, and other assets of Sidler from Barry, prevailed on his claim plaintiffs violated a noncompetition/nonsolicitation provision of the sales agreement.

Plaintiffs argue the court erred in finding plaintiffs solicited customers in violation of the noncompetition/nonsolicitation provision. They also argue the provision violated Business and Professions Code section 16600,[1] which voids any contract restraining a person from engaging in a lawful business. They claim the noncompetition/nonsolicitation provision did not fall within the exception set out in section 16601. That exception allows parties to an agreement for the sale of a business, including goodwill, to agree that the seller will not compete so long as certain conditions are met, including a limited geographic restriction.

We conclude the trial court did not err and affirm.

Plaintiffs also filed a request for us to judicially notice all of their arbitration exhibits and several other documents. We deny the request because none of these documents were offered in or considered by the trial court in connection with the motion to vacate the award.

## FACTS AND PROCEDURAL HISTORY

Barry owned Sidler, doing business as Ocean Crest Insurance Agency (Ocean Crest), located in Huntington Beach, California.[2] Ocean Crest's book of business was comprised of two components: traditional policies issued by Allstate Insurance Company (Allstate) for automobiles and other vehicles, condominiums and renters,

---

[1] All further statutory references are to this code unless otherwise designated.

[2] The facts are taken primarily from the arbitrator's final award and the superior court's order denying plaintiffs' motion to vacate the arbitration award.

2

umbrella, and commercial lines; and policies issued by carriers affiliated, but not a part of, Allstate, including Tower Insurance.

Raymond Tourgeman (Tourgeman) owned defendant RJT Investment Services, Inc. In about April 2010, Tourgeman contacted Barry about the possibility of selling Sidler. Thereafter, in July 2010, the parties entered into an Agreement of Purchase and Sale of Assets (Agreement) for defendant to purchase certain assets, including the Allstate Business and Tower Insurance policies from plaintiffs. Plaintiffs retained the rights to all other carriers.

The purchase price was $850,000, consisting of a down payment of $750,000 in cash and a note for $100,000. The purchase price was allocated as follows: $420,000 for goodwill; $420,000 for the client list; $5,000 for furniture and equipment; and $5,000 for a covenant not to compete/nonsolicitation provision (noncompetition/nonsolicitation provision).

That provision stated: "Seller agrees that he will not at any time within the five (5) year period, immediately following the closing date, directly or indirectly, engage in, or have any interest in any person, firm, corporation, or business that engages in, any activity within a twenty (20) mile radius of the SELLER'S current location at 8907 Warner Avenue, Suite 260, Huntington Beach, California 92647, which activity is the same as, similar to, or competitive with any activity now engaged in by SELLER so long as the BUYER shall engage in this activity. [¶] . . . [¶] In addition, SELLER agrees to not directly or indirectly, on the SELLER'S own behalf or in conjunction with any person or legal entity, solicit, or induce, or attempt to solicit any policyholders or employees of SELLER, or induce or attempt to induce, any such policyholders or employees of SELLER to cease doing business with or being employed by BUYER, or in any way interfere with the relation between the policyholders or employees, and BUYER."

In July, after the Agreement was signed but before the close of escrow, and without defendant's knowledge, plaintiffs twice sent an automated telephone

3

announcement to Ocean Crest's entire customer list, about 1,700 in number, stating the following, "All things come to an end.  After 40 years of family partnership with Allstate, I have decided to move forward on my business journey and end my relationship with Allstate Insurance.  This change is effective 8/1/10.  Some of you will transition to a new Allstate agent.  Others of you who have products outside of Allstate will continue with my service and will see no change other than a new office address and telephone number.  [¶] I want you to know that I value the relationship we have had over many years, and if you have any questions about this change or how it will effect [*sic*] you, please feel free to contact me and I will happily answer any questions you have.  [¶] My new business number is 888-291-1625 extension 1.  If you don't reach me please leave a message.  I promise to call back anyone who does have questions about this change.  [¶] You can always visit my website at www.myOcean Crest.com (underscoring omitted) for additional information, or feel free to send me an email at barry.sidler@myOceanCrest.com."

Plaintiffs also sent the same message in an e-mail to approximately 700 people, not all of whom were Allstate customers.  The e-mail "featured additional language in the caption or banner which suggested the recipient consider buying insurance from [plaintiffs]."  When Allstate later questioned Sidler as to whether he had confidential customer information or had solicited Allstate customers, plaintiffs destroyed the list of those to whom they had sent the e-mail.

At the same time plaintiffs discovered one of their longtime, key employees, Harriett Price, was retiring.  They therefore twice sent the original automated call, with additional information about Price's retirement, to the original recipients.

Plaintiffs' calls and e-mails caused a "deluge[]" of calls from policyholders to defendant expressing concern about Sidler's and Price's departures.  The customers had questions about whether the agency would remain in business, the identity of their agent, and whether their policies were still in effect.  Sidler and Price explained to the

4

callers defendant was taking over the agency as to Allstate and Tower customers. They also gave them the new contact information for Sidler.

In addition, plaintiffs also set up a new Web site, containing the same language from the e-mail, including the banner language suggesting customers think about purchasing insurance from plaintiffs. It also mentioned plaintiffs' Huntington Beach address, even though plaintiffs had moved to Sidler's residence in Mission Viejo.

In July a potential client named Gaye Applegate was referred to plaintiffs. They "deferred talking to her" until after escrow closed.[3]

When escrow closed in August, Tourgeman moved into the Huntington Beach office and began receiving several calls from the recipients of plaintiffs' e-mails and automated telephone calls. Tourgeman testified he spent 75 percent of his time during the first several months of business fielding the calls. The calls all dealt with customers' confusion about who, if anyone, was their Allstate agent and if they were covered by their policies. Tourgeman sent out his own automated telephone message wherein he introduced himself as the new owner of Ocean Crest, which would continue to handle their insurance requirements.

In October 2010, plaintiffs sent another e-mail to 65 customers who may or may not have received the prior phone calls and e-mails. Plaintiffs' e-mail expressed their disillusion with Allstate and offered insurance policies from other carriers.

In late 2010 and continuing into 2011, Tourgeman came to the conclusion plaintiffs had misappropriated some of his Allstate clients. Pursuant to the Agreement, he filed a demand for arbitration, asserting claims for breach of contract and the covenant

---

[3] The arbitrator found this conduct breached the implied covenant of good faith and fair dealing. The parties include this finding in their discussions although it does not appear plaintiffs appealed this either in the trial court or here. In the event plaintiffs did intend to appeal this issue, the claim is waived for failure to properly brief. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

of good faith and fair dealing, fraud, and unfair competition, seeking damages and injunctive relief.

In the award (Award) the arbitrator found for defendant on the theories of breach of contract and breach of the covenant of good faith and fair dealing. As applicable to this appeal, the arbitrator found plaintiffs interfered with 12 of defendant's policyholders, who either received a quote or purchased insurance from plaintiffs, in violation of the noncompetition/nonsolicitation provision. Based on the language of the Agreement, policyholders (Policyholders) were defined to mean only those who, at the close of escrow, owned Allstate or Tower policies or a combination of the two, and did not own any non-Tower affiliate policies.

Plaintiffs then filed a petition in the superior court to vacate the Award, arguing the arbitrator erred in ruling the noncompetition/nonsolicitation provision neither violated section 16600 nor prohibited Sidler from engaging in a lawful profession; and further erred in finding plaintiffs breached the noncompetition/nonsolicitation provision by doing business with a few of the Policyholders even though plaintiffs had not solicited their business but the Policyholders had contacted plaintiffs. In addition to opposing that motion, defendants filed a motion to confirm the Award.

The trial court granted the motion to confirm. The ruling essentially repeated the facts as set out in the Award. It also found plaintiffs interfered with defendant's business by contacting 12 specified Policyholders who left defendant's agency or bought new policies from plaintiffs. Defendant was damaged in the sum of $19,878 in lost commissions and also incurred $19,603.68 in litigation costs and $126,147.60 in attorney fees.

The court relied on section 16601, which allows the seller of a business, including goodwill, to agree to refrain from engaging in a competing business within a specific geographic area so as to protect the buyer's investment. It found the noncompetition/nonsolicitation provision was narrow enough to bar solicitation only of

6

existing clients plaintiffs had sold to defendant that held Allstate or Tower policies, or both. Plaintiffs no longer sold Allstate policies so the only legitimate reason he would contact these Policyholders would be to introduce them to defendant. An attempt to sell other insurance products was prohibited competition.

The court was not persuaded by plaintiffs' argument they were not barred since they were outside the geographic area as defined in the Agreement. The arbitrator had found the automated telephone calls and e-mails listed an address within the defined 20-mile radius.

Finally, the court ruled, plaintiffs sold the Allstate client list for $420,000, and inferred from the price that the information on the list was not readily ascertainable and was protected information. Aside from relying on the noncompetition/nonsolicitation provision, the arbitrator was correct in determining plaintiffs' "use of the list was independently wrongful and actionable as an interference with prospective economic advantage."

## DISCUSSION

*1. Review of Arbitration Awards*

Based on the strong public policy in support of arbitration, courts generally do not review arbitration awards for factual or legal errors (*Jones v. Humanscale Corp.* (2005) 130 Cal.App.4th 401, 407), including sufficiency of the evidence or reasoning of the arbitrator (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11). Usually arbitration awards are final. (*Id*. at p. 10.)

There are, however, limited exceptions to this rule, including where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., §1286.2, subd. (a)(4).) The "merits" described in this section encompass all contested legal and factual issues before the arbitrator. (*Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at p. 28.) Within this statutory exception is a claim the Award violated "'an explicit

7

legislative expression of public policy.'" (*Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 37; *Ahdout*.)

Section 16600 states, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." "Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice. [Citations.]" (*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 575.)

Plaintiffs argue the Award violated section 16600. The trial court relied on the strong public policy underlying section 16600 to bring this case within the public policy exception allowing review of the Award; defendants do not dispute appropriateness of review under this theory.

Under these circumstances the Award is reviewable. (See *Ahdout, supra,* 213 Cal.App.4th at p. 38 [arbitration award regarding contractor's state licensing law, an "'explicit legislative expression of public policy,'" reviewable].)

A trial court's review of an arbitrator's decision is de novo. It must consider all admissible evidence the parties present, whether or not it was submitted to the arbitrator. (*Ahdout, supra,* 213 Cal.App.4th at pp. 39-40.) It must also take into account the award itself, including any evidence and testimony described therein. (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 893, fn. 8.) Thus, the arbitrator's findings as to whether plaintiffs solicited their former Policyholders or interfered with defendant's business were not binding on the trial court. (*Ahdout, supra,* 213 Cal.App.4th at p. 39.)

"On appeal from an order confirming an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. [Citations.] To the extent that the trial court's ruling rests upon a determination of disputed factual

8

issues, we apply the substantial evidence test to those issues." (*Lindenstadt v. Staff Builders, Inc, supra,* 55 Cal.App.4th at p. 892, fn. 7.)

Plaintiffs, as the parties moving to vacate the Award, have the burden to show error. (*Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 826.)

## 2. *Request for Judicial Notice*

Plaintiffs filed a request for judicial notice of a number of documents, primarily exhibits from the arbitration hearing, 82 from plaintiffs' exhibit list and three from defendant's list. The other documents are the demand for arbitration and response thereto, the interim and amended interim award issued by the arbitrator, defendant's motion to be declared the prevailing party, and the results of two Mapquest searches.

In his declaration, counsel states all of the documents were filed in the arbitration action and served on the opposing party. He also states the documents are relevant and necessary for us to decide the issues raised in plaintiffs' briefs because the documents provide background information and context.

We deny the request. As plaintiffs acknowledge none of these documents was presented to the trial court. When a petition to set aside an arbitration award is filed, it is the trial court's responsibility to review all evidence submitted to it. Here, because plaintiffs did not submit the evidence to the trial court, the court did not have the opportunity to consider it. Our de novo review does not extend to review of evidence not before the trial court. Rather, we only conduct a de novo review of the trial court's decision based on what was submitted to it. Therefore, not only do we deny the request for judicial notice, we will not consider any of the evidence or other documents nor any of plaintiffs' arguments supported solely by the documents in the request.

## 3. *Plaintiffs' Violation of NonCompetion/NonSolicitation Provision*

Plaintiffs contend the trial court erred in finding they solicited customers in violation of the noncompete/nonsolicitation provision in the Agreement. They criticize the court's order that stated once plaintiffs "sought to lure [Policyholders] away from

9

[defendant, plaintiffs were] competing with [defendant]" as conflicting with the Award's language that plaintiffs did not "actually solicit[]" a Policyholder. Rather, plaintiffs urge, the arbitrator based liability on the language barring plaintiffs from interfering with the relationship between defendant and the Policyholders. This argument does not persuade.

The arbitrator found plaintiffs sold insurance or gave quotes to Policyholders. Although he called it interference, the conduct falls within the noncompetition language of the noncompetition/nonsolicitation provision, which bars plaintiffs from engaging in a business or activity the same as or similar to defendant's business within the specific time and radius limitations spelled out. The trial court agreed, ruling the "'no[-]compete' limitation [was] actually the 'do not interfere' provision."

Plaintiffs' counsel conceded at argument on the motion to vacate that the arbitrator did not make any erroneous factual findings. Plaintiffs' objection to the word "lure" is merely an exercise in semantics. Use of a different word to describe the conduct does not change the conduct itself or the findings based thereon.

*4. Geographic Radius*

Plaintiffs maintain the court erred in finding their wrongful interference occurred within the 20-mile radius of defendant's agency. They argue the arbitrator did not make any findings "as to the location of any of [plaintiffs'] business conduct relating to any of the 12 customers." This argument fails factually and legally.

The arbitrator stated that when plaintiffs set up their new Web site they "alluded to a contact location at the previous Ocean Crest address on Warner in Huntington Beach, though Mr. Sidler had actually relocated to his home in Mission Viejo." In their opening brief plaintiffs acknowledge they had office space in Huntington Beach until April 2011, eight months after escrow closed. (*Sabey v. City of Pomo*na (2013) 215 Cal.App.4th 489, 496, fn. 1 [statements in briefs considered admissions against party].) No one does or reasonably could dispute that a Huntington Beach

10

address is within 20 miles of defendant's agency. And, based on the statement in the Award that plaintiffs used their Huntington Beach address in their new Web site, it was reasonable for the trial court to find plaintiffs competed within a 20-mile radius.

Plaintiffs assert the Mission Viejo address is outside the 20-mile limitation, but there was no evidence to that effect before the trial court, and, consequently, there is none before us. In fact, there is no evidence this was even contested at the arbitration. As noted above, plaintiffs had the burden to show the award was erroneous, and did not do so.

In a related argument, plaintiffs contend the arbitrator erred because he did not analyze as to each of the 12 Policyholders whether the interference was within the 20-mile radius and thus fell within the exception in section 16601.[4] They claim the failure of the arbitrator to perform this analysis precluded them from offering evidence to prove they did not solicit their business and also were not within the 20-mile radius. Not so.

Whether the arbitrator performed such an analysis, in connection with their motion to vacate plaintiffs had the right to introduce evidence to support their claims. The trial court would have been required to review any admissible evidence they offered. (*Ahdout, supra,* 213 Cal.App.4th at pp. 39-40.) We have already determined plaintiffs' attempt to present such evidence to us via the request for judicial notice is not well taken. The evidence contained in those documents may have persuaded the trial court to vacate the Award but because it is not in the record, we may not consider it.

Further, the location of the 12 Policyholders is irrelevant. What is important is the location of plaintiffs' business vis-à-vis the location of defendant's agency. And the substantial evidence is that location was within the 20-mile radius.

---

[4] In conjunction with this argument, relying strictly on the documents included in the request for judicial notice, plaintiffs claim at least some of the 12 Policyholders contacted him. But there is no evidence in the record to that effect.

11

*5. Interference with Prospective Economic Advantage*

Because we affirm the finding plaintiffs wrongfully competed as to the 12 Policyholders in breach of the noncompetition/nonsolicitation provision, there is no need to address this independent ground upon which the trial court confirmed the Award.

**DISPOSITION**

The judgment is affirmed. The request for judicial notice is denied. Defendant is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.

12