Filed 2/18/21; certified for publication 3/16/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MICHAEL BACALL et al., | B302787 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC674035) |
| v. | |
| JEFFREY SHUMWAY et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Ruth Ann Kwan, Judge. Affirmed.

Faegre Drinker Biddle & Reath; Fitzgerald Legal Consult and James E. Fitzgerald for Defendants and Appellants.

Freedman + Taitelman, Bryan J. Freedman and Sean M. Hardy for Plaintiffs and Respondents.

_____

An arbitrator issued an award against appellants Jeffrey Shumway and Timaeus Group, LLC (together, Appellants) and in favor of respondents Michael Bacall and RBC Entertainment, Inc. (together, Respondents) in a contract dispute. The arbitrator partially rescinded the contract after finding Shumway provided legal services without an active license. Appellants petitioned to vacate the award on the grounds that the arbitrator exceeded his powers and engaged in misconduct. The trial court rejected Appellants' arguments and confirmed the award. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Bacall is a successful actor and screenwriter, and RBC Entertainment, Inc. (RBC) is his loan-out company. Shumway represented Bacall as his attorney and talent manager for many years.

In 2011, Shumway left his law firm and formed Timaeus Group, LLC (Timaeus). Three years later, he changed his status with the California State Bar to "inactive." Shumway continued to represent Bacall, but he allegedly never informed Bacall that he could no longer practice law in light of his inactive status.

In early 2016, RBC entered into a representation agreement with Timaeus. Under the agreement, Timaeus agreed to provide RBC with "Chief Content Officer" services, as well as management, producing, and business affairs services. In exchange, RBC agreed to pay Timaeus a $243,750 Chief Content Officer fee and a 10 percent management commission.

The initial agreement lasted one year, and the parties entered into essentially the same agreement in early 2017. Bacall terminated the new agreement on May 26, 2017 when he discovered Shumway was "inactive" with the California State Bar.

Timaeus filed a demand for arbitration with the American Arbitration Association, alleging breach of contract. Respondents then filed a complaint against Appellants in superior court, asserting causes of action for fraud, rescission, legal malpractice, breach of fiduciary duties, and violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL). The gravamen of the complaint was that Shumway, who was the alter ego of Timaeus, had represented himself as a lawyer and provided legal services to Respondents, despite not being authorized to practice law. Among other things, Respondents sought rescission of the 2016 and 2017 agreements on the basis that they were unlawful and violated public policy.

Appellants moved to compel arbitration of Respondents' claims pursuant to arbitration clauses contained in the 2016 and 2017 agreements. The trial court granted the motion.

*Arbitration*

After issuing a series of orders and conducting a two-day evidentiary hearing, the arbitrator issued an award requiring Appellants pay Respondents $201,025.82 plus attorney fees and costs. The arbitrator found Shumway had rendered legal services to Respondents under the 2016 and 2017 agreements, during which time he was not licensed to practice law. Those services included corresponding with attorneys about a contract, redlining agreements, and making comments on proposed contracts. The arbitrator concluded that because Shumway was providing unlicensed legal services under the agreements, the "contract between the parties was properly ended, for good and valid reason, on May 26, 2017. Bacall owes no further money to Shumway."

3

The arbitrator then discussed the law related to the severability of partially-illegal contracts, after which he concluded "it has been clearly established that there were two types of services being rendered by [Appellants]: legal/management services and [Chief Content Officer] services. It is only proper that Respondent[s] be able to recoup the monies paid for the legal services that were improperly rendered. However, Respondent[s] received [Chief Content Officer] services over the 16 month period that were proper and beneficial, which Respondent[s] will not be able to recoup."

The arbitrator next turned to the proper allocation of the fees and commissions that Respondents had paid under the agreements. He concluded Appellants were entitled to retain their fees for Chief Content Officer services, which totaled $406,393.70. However, they had to return the $201,025.82 paid in commissions. The arbitrator noted that although the commissions covered legal work and non-legal managerial work, Shumway's conduct during the arbitration made it impossible to allocate the amount between them.

Finally, the arbitrator concluded Respondents were the prevailing parties and awarded them $237,607.25 in attorney fees and costs.

*Post-Arbitration Proceedings*

Respondents filed a petition in the trial court to confirm the award. Appellants, in turn, petitioned the court to vacate the award on the basis that the arbitrator exceeded his powers and engaged in misconduct. Among other things, they argued the trial court was required to independently determine whether the 2016 and 2017 contracts were illegal. The trial court rejected Appellants' arguments and confirmed the award. Shumway

4

subsequently filed a motion for renewal and/or reconsideration, which the court also denied.

The trial court entered judgment in favor of Respondents, and Appellants timely appealed.

## DISCUSSION

Appellants contend the arbitration award must be vacated because the arbitrator exceeded his authority by declaring the 2016 and 2017 agreements illegal, violating public policy and their statutory rights, concluding Shumway engaged in the unlicensed practice of law, and ruling Shumway is liable for repayment of the commissions. They also contend the arbitrator engaged in misconduct by refusing to allow them to address issues related to attorney fees and costs. We disagree with each of these contentions.

## I.    Relevant Law

In general, judicial review of an arbitration award is extremely limited. As the California Supreme Court explained in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 (*Moncharsh*), "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Id*. at p. 6.) This is because parties who enter into arbitration agreements are presumed to know the arbitrator's decision will be final and binding; "arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id*. at p. 10.) Courts do not review the validity of an arbitrator's reasoning, and, while Code of Civil Procedure sections 1286.2 and 1286.6 set forth grounds for vacating or correcting an arbitration award, " '[a]n error of law is not one of those grounds.' [Citation.]" (*Moncharsh*, at pp. 11, 14.)

5

Under Code of Civil Procedure section 1286.2, a court may vacate an arbitration award if the "rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of [the California Arbitration Act]." (Code Civ. Proc., § 1286.2, subd. (a)(5).)  A court may also vacate an arbitration award when the arbitrator has exceeded his or her powers "and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (*Id.*, subd. (a)(4).)

To determine whether an arbitration award should be vacated under Code of Civil Procedure section 1286.2, we review the trial court's decision de novo. (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443–444.)

## II. The Trial Court Was Not Required to Independently Review the Legality of the Agreements

Relying on *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving & Evans*), Appellants contend the trial court erred in refusing to independently determine the legality of the 2016 and 2017 agreements.  We disagree.

In *Loving & Evans*, the California Supreme Court recognized an exception to the general rule that a court may not set aside an arbitration award even if the arbitrator made an error in law or fact.  In that case, the arbitrator rendered an award in favor of contractors in a contractual dispute with a property owner. (*Loving & Evans, supra*, 33 Cal.2d at p. 605.)  In opposing confirmation of the award, the property owner argued that because one of the contractors was unlicensed, the contract was illegal and unenforceable. (*Id.* at pp. 605–606.)  The trial court nevertheless confirmed the award. (*Id.* at p. 606.)

6

The Supreme Court reversed, in the process holding "the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award. When so raised, the issue is one for judicial determination upon the evidence presented to the trial court, and any preliminary determination of legality by the arbitrator, whether in the nature of a determination of a pure question of law or a mixed question of fact and law, should not be held to be binding upon the trial court." (*Loving & Evans, supra*, 33 Cal.2d at p. 609.)

The Supreme Court suggested two reasons for this exception. First, an arbitrator who enforces an illegal contract exceeds his powers because "[i]n the absence of a valid contract no such rights [under contract] can arise and no power can be conferred upon the arbitrator to determine such nonexistent rights." (*Loving & Evans, supra*, 33 Cal.2d at p. 610.) Second, "[i]f this were not the rule, courts would be compelled to stultify themselves by lending their aid to the enforcement of contracts which have been declared by statute to be illegal and void. A party seeking confirmation cannot be permitted to rely upon the arbitrator's conclusion of legality for the reason that paramount considerations of public policy require that this vital issue be committed to the court's determination whenever judicial aid is sought." (*Id.* at p. 614.)

Appellants contend that under *Loving & Evans*, the trial court was required to independently determine whether the 2016 and 2017 agreements were illegal, without giving any weight to the arbitrator's decision.

7

Based on the procedural history of this case, we find this argument somewhat curious. First, it was the Respondents which attempted to have the legality of the agreements initially determined by a court (not through arbitration), but Appellants successfully moved the trial court to send the case to arbitration. Second, throughout the arbitration, Appellants never suggested the legality of the agreements was an issue beyond the arbitrator's powers to decide. This is understandable. At the arbitration, Appellants were not contending the contract was illegal. Quite the opposite. Appellants sought to enforce the contract. It was only after the arbitrator decided against them that they first raised this as a concern.

In any event, we are not persuaded the *Loving & Evans* exception applies to this case. In *Loving & Evans*, and every other case upon which Appellants rely, one of the parties sought to vacate the arbitration award on the basis that the arbitrator enforced an illegal contract. (See *Loving & Evans, supra*, 33 Cal.2d at pp. 605–606; *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 71; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 888.) The instant appeal is the opposite scenario—the arbitrator did not enforce an illegal contract, instead, the arbitrator severed the unlawful legal services rendered on a contract that Respondents had terminated on May 26, 2017 and allocated damages accordingly.

Here, unlike *Loving & Evans*, Appellants contend something different: that the award must be vacated because the arbitrator erroneously failed to enforce a legal contract. Given this distinction, neither rationale underpinning the *Loving & Evans* exception exists: the arbitrator was not tasked with

8

determining "nonexistent rights," nor was the trial court called upon to aid the enforcement of an illegal contract.

Because we conclude the *Loving & Evans* exception does not apply to this case, we need not consider Appellants' arguments that the arbitrator made legal errors in concluding the 2016 and 2017 agreements were illegal. (See *Moncharsh, supra*, 3 Cal.4th at p. 14 [arbitration awards generally may not be vacated for legal errors].) We also reject Appellants' derivative argument that the arbitrator exceeded his powers by ruling the agreements were illegal.

## III. The Award Does Not Violate Public Policy or Appellants' Statutory Rights

An arbitrator may exceed his or her powers "by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) Here, Appellants argue the award must be vacated because it violates public policy and statutory rights found in the Talent Agencies Act (Lab. Code, § 1700 et seq.). We disagree.

Appellants first contend the award violates the well-defined and dominant public policy expressed in the Talent Agencies Act. Appellants concede, however, that the Talent Agencies Act's central legislative concern is the exploitation of artists by representatives. (See *Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 984 ["Exploitation of artists by representatives has remained the Act's central concern through subsequent incarnations to the present day."]; *Waisbren v. Peppercorn Productions, Inc.* (1995) 41 Cal.App.4th 246, 254 [the Talent Agencies Act was enacted for the protection of artists].) It is not clear, and Appellants do not explain, how the award

9

violates this public policy. If anything, it would seem to further the policy by protecting Bacall from his representative, Shumway. Accordingly, we decline to vacate the award on this ground.

Appellants alternatively contend the award violates their statutory rights. We disagree. Appellants insist the award violates their statutory rights found in Labor Code section 1700.44, which provides it is not unlawful for a non-talent agent "to act in conjunction with, and at the request of, a licensed talent agency in the negotiation of an employment contract." (Lab. Code, § 1700.44, subd. (d).) According to Appellants, this provision gave them the right to perform all the services that the arbitrator concluded constituted the unlicensed practice of law, such as corresponding with attorneys, redlining agreements, and making comments on proposed contracts. The plain meaning of the "safe harbor" provision based on the language of Labor Code section 1700.44, subdivision (d),[1] however, is to exempt individuals and corporations from obtaining a talent agency license when a licensed talent agent requests assistance in the negotiation of an employment contract, not to permit the practice of law without a license.

Additionally, assuming that Labor Code section 1700.44 grants Appellants unwaivable statutory rights, their argument nonetheless fails because they have not shown the award violated those rights. Although Appellants point to evidence in the record

---

[1] Labor Code section 1700.44, subdivision (d) states, "It is not unlawful for a person or a corporation which is not licensed pursuant to this chapter to act in conjunction with, and at the request of, a licensed talent agency in the negotiation of an employment contract."

10

showing Shumway was working "in conjunction with" licensed talent agents, they have not pointed to any evidence showing he was working "at the request of" a licensed agent, which is required to fall within the safe harbor provision of Labor Code section 1700.44. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [a lower court's judgment is presumed correct and the appellant must affirmatively show error]; *Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14 [Courts of Appeal "do not serve as 'backup appellate counsel' "].)

## IV. The Arbitrator Did Not Exceed His Powers by Finding Shumway Engaged in the Unlicensed Practice of Law

Appellants contend the arbitrator exceeded his powers by finding Shumway engaged in the unlicensed practice of law. They argue that in making such a finding, the arbitrator essentially imposed discipline on them and improperly "highjack[ed]" the regulatory power of the State Bar and the courts. We disagree.

Contrary to Appellants' claims, the arbitrator did not regulate the practice of law or impose discipline on them. Rather, it is clear he concluded Respondents were entitled to restitution because Shumway's unlicensed practice of law rendered portions of the 2016 and 2017 agreements illegal. The arbitrator acted well within his authority in so finding. (See *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1182 ["Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation."];

11

*Moncharsh, supra*, 3 Cal.4th at p. 30 [holding the legality of a contract provision was a question for the arbitrator].)

## V. The Arbitrator Did Not Exceed His Powers by Ruling Shumway is Personally Liable for the Award

Appellants contend the arbitrator exceeded his powers by ruling Shumway is personally liable for repayment of the commissions to Respondents. They acknowledge that Respondents claimed Shumway was liable as Timaeus's alter ego and submitted that issue to arbitration. Nonetheless, they insist the arbitrator lacked power to issue an award against him because Respondents failed to submit any evidence to support their alter ego theory. We disagree.

Despite framing their argument in terms of the arbitrator's powers, Appellants have essentially argued insufficiency of the evidence to support the decision to hold Shumway liable for repayment of the commissions. Even if that were true, it would not provide grounds for vacating the award. As the court explained in *Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, "[t]ypically, we would review a trial court's finding as to whether a person or entity is the alter ego of a corporation under the substantial evidence standard. [Citations.] But our review of an arbitration award is different. 'We do not review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face." (*Id.* at p. 359, fn. omitted.)

Appellants' reliance on *Tenzera, Inc. v. Osterman* (2012) 205 Cal.App.4th 16, is misplaced. In that case, the court vacated an arbitration award against individuals who were not parties to

12

the relevant arbitration agreement and had not voluntarily consented to arbitration. (*Id*. at pp. 19–20.) Here, in contrast, Shumway voluntarily consented to have Respondents' claims against him decided through arbitration, and Appellants do not contend the arbitrator lacked jurisdiction to issue an award against him. Instead, they argue the award lacks evidentiary support, which is not a proper basis to vacate an arbitration award.

## VI. The Arbitrator Did Not Engage in Misconduct

Appellants contend the arbitrator engaged in misconduct by denying them the opportunity to address issues related to attorney fees and costs. We disagree.

### A. Background

In their post-hearing arbitration briefs, Respondents requested an award of attorney fees and costs. In support, they submitted detailed billing records and a declaration from their counsel describing the fees and costs incurred in the matter.

Appellants' counsel responded by sending the arbitrator an e-mail stating that, in his experience, arbitrators typically will entertain an application for attorney fees and costs after the award has been rendered. Counsel, therefore, suggested waiting until after the arbitrator rendered a decision on the merits of the claims to file a response to Respondents' request. Counsel offered to file an immediate response if the arbitrator wanted to proceed differently.

The arbitrator wrote back: "Consideration of attorney fees will not take place until the case is decided and a prevailing party is determined. Anything submitted in that regard will not be read until then."

13

Appellants did not file a response to Respondents' request, nor did they file their own request for attorney fees and costs. The arbitrator's final award included a finding that Respondents were the prevailing parties, and it awarded them $237,607.25 in attorney fees and costs.

After the arbitrator issued his award, Appellants requested the opportunity to submit an opposition to Respondents' request for attorney fees and costs. Appellants represented that they declined to file one earlier because they "were led to believe [by the arbitrator's e-mail] that we would have time after a decision on the merits to address prevailing party and attorney fees issues."

The arbitrator construed Appellants' request as an application for modification. In denying the request, the arbitrator noted that he had already issued his final award.

**B. Analysis**

Code of Civil Procedure section 1286.2, subdivision (a)(5) requires a court vacate an arbitration award where the "rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title." The provision "was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.] It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue. [Citation.] The Arbitration Act codifies 'the fundamental principle that "[a]rbitration should give both parties an opportunity to be heard." [Citation.] . . . [T]he opportunity to be heard must be extended to all parties

14

equitably.' [Citation.] To conduct an arbitration without abiding by that principle evinces bias, constituting misconduct." (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368–369.)

Here, Appellants contend the arbitrator engaged in misconduct by denying, without reason, their request to file an opposition to Respondents' request for attorney fees and costs. They argue the arbitrator failed to give them an opportunity to present evidence and argument on a significant financial issue in the case. They further suggest the arbitrator violated the Arbitration Act's requirement that an arbitrator conduct "a balanced process in which each party is given an opportunity to participate." We are not persuaded.

Initially, we disagree the arbitrator denied Appellants' request to file an opposition without reason. The arbitrator's decision indicates he construed Appellants' request as an "application for modification" of the final award. Such applications are governed by rule R-50 of the AAA Commercial Arbitration Rules, which states an "arbitrator is not empowered to redetermine the merits of any claim already decided." By the time Appellants filed their request, the arbitrator had already determined the merits of the attorney fees and costs issues. Under rule R-50, he was not permitted to reconsider those issues. We think it is reasonable to infer this was the basis for the arbitrator's decision.

Appellants' claim that the arbitrator denied them the opportunity to address the attorney fees and costs issues is also mistaken. Appellants were free to submit arguments and evidence on those issues before the arbitrator made his final award, just as Respondents did. In fact, Appellants offered to do precisely that in their e-mail to the arbitrator. For whatever

15

reason, they instead decided to wait until after the arbitrator issued his final award to attempt to address the issues.

Appellants suggest they declined to file an opposition in reliance on the arbitrator's order allowing them to address attorney fees and costs after he decided the merits of the parties' claims. The arbitrator, however, never made such an explicit order; Appellants interpreted that into the arbitrator's e-mail response. While we acknowledge the arbitrator's response was vague, the onus was on Appellants to seek clarification, which they failed to do.

Appellants further point out that until the arbitrator issued his decision on the merits, neither side could know how best to argue who the prevailing party should be or to what extent that party would be entitled to attorney fees and costs. While we do not disagree this may be so, Respondents, facing the same challenges, managed to address the attorney fees and costs issues in their post-hearing briefs.

As the Supreme Court recently reaffirmed, " ' "[t]he statutory provisions for [review of an arbitration award] are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding." ' [Citation.]" (*Heimlich v. Shivji, supra*, 7 Cal.5th at p. 368.) This is not one of those cases.

## VII. Respondents' Requests for Sanctions and Attorney Fees

Respondents request we issue sanctions against Appellants for filing a frivolous appeal. An appeal is frivolous "when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably

16

has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.) "An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. . . . the punishment should be used most sparingly to deter only the most egregious conduct." (*Id.* at pp. 650–651.)

Our disagreement with the Appellants' contentions does not mean any reasonable attorney would find them totally and completely without merit. Moreover, we have not been presented with clear evidence of subjective bad faith in connection with this appeal, nor does the appeal appear to fall into the category of the "most egregious conduct." We therefore decline to impose sanctions against Appellants for filing a frivolous appeal.

We also deny without prejudice Respondents' request for attorney fees on appeal. Any request for such fees should be made in the trial court. (See Cal. Rules of Court, rule 3.1702.)

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.


OHTA, J.*

We concur:



GRIMES, Acting P. J.



WILEY, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 3/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MICHAEL BACALL et al., | B302787 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC674035) |
| v. | |
| JEFFREY SHUMWAY et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed on February 18, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

[There is no change in the Judgment.]

_____

GRIMES, Acting P. J.     WILEY, J.     OHTA, J.*

---

*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.