Filed 6/1/22  Ponist Law Group v. Nationwide Biweekly Admin. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PONIST LAW GROUP, P.C., et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>        Defendants and Appellants. | A160798<br><br>(San Francisco County Super. Ct. No. CPF 18-516384) |

Nationwide Biweekly Administration, Inc. (NBA); Loan Payment Administration LLC (LPA; together with NBA, "Nationwide"); and Daniel S. Lipsky appeal from a trial court order denying their petition to vacate an arbitration award and the trial court's judgment confirming that award.  The arbitration resolved a claim for unpaid legal fees by Ponist Law Group, P.C. and Sean E. Ponist (together, Ponist), who were formerly counsel to Nationwide and Lipsky.  Nationwide and Lipsky contend the trial court erred in ruling that they were properly served with Ponist's petition to appoint the arbitrator. Lipsky also argues the trial court erred in failing to vacate the

1

award against him because Ponist's fee agreement with him was void for violating public policy. We conclude the trial court properly denied Nationwide and Lipsky's petition to vacate the award and will affirm the judgment.

## BACKGROUND[1]

In 2014, NBA hired Ponist, a two-person law firm, to represent it in connection with certain government suits against it. (See, e.g., *Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 294.) Lipsky, who was NBA's founder, president, sole officer, and sole shareholder, signed Ponist's fee agreement for NBA. (*Nationwide Biweekly Administration, Inc. v. Owen* (9th Cir. 2017) 873 F.3d 716, 721, fn. 1; *Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.* (N.D.Cal., Sept. 8, 2017, No. 15-cv-02106-RS) 2017 U.S. Dist. LEXIS 145923, at *1.) The fee agreement includes an arbitration clause that states, "The parties shall arbitrate any dispute using American Arbitration Association and the arbitration shall be conducted pursuant to the provider's rules. If the parties cannot agree on an arbitrator, then the Superior Court of the County of San Francisco shall

---

[1] We draw the facts in this matter from the award of the arbitrator that is at issue, as well as additional evidence the parties submitted to the trial court in connection with Nationwide's petition to vacate the award. (*Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 893, fn. 8 (*Lindenstadt*).) We grant Ponist's request for judicial notice of the commercial arbitration rules of the American Arbitration Association (AAA). (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505, fn. 6 [noticing AAA's commercial arbitration rules].)

2

choose an impartial arbitrator whose decision shall be final and conclusive on all parties."

Ponist later broadened its representation to include Lipsky, an Ohio resident, and LPA, which was a wholly-owned subsidiary of NBA. (*Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*, *supra*, 2017 U.S. Dist. LEXIS 145923, at \*1.) In December 2015, Ponist therefore asked NBA, LPA, and Lipsky to sign a first addendum to the fee agreement. Ponist emailed the first addendum to two attorneys for NBA, telling them that it memorialized the existing representation, provided a required conflict of interest advisement, and clarified the scope of services Ponist would provide. Lipsky signed the first addendum for NBA, LPA, and himself personally.

The first addendum is four pages and includes an acknowledgement and waiver of conflicts of interest arising from Ponist's joint representation of Nationwide and Lipsky. It also includes the text of former rule 3-310 of the Rules of Professional Conduct, which at the time governed conflicts of interest in legal representation.[2] The last page of the first addendum consists of a four-line paragraph of text and then the signature lines. That paragraph states, "CLIENT HAS READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREES TO THEM AS OF THE DATE ATTORNEY FIRST PROVIDED SERVICES. IF

---

[2] Comprehensive amendments to the Rules of Professional Conduct, which included renumbering of the rules, took effect in November 2018. (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 85, fn. 7 (*Sheppard Mullin*).)

MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT." Ponist copied this paragraph from a State Bar model fee agreement.

Nationwide suspended operations shortly before Lipsky signed the first addendum, and its outside counsel withdrew from representing it due to non-payment of fees. Ponist therefore asked Nationwide and Lipsky to sign a second addendum intended to ensure they would pay Ponist's fees. Like the first addendum, the second addendum includes a paragraph attesting that Nationwide and Lipsky agreed to the terms and further agreed that they would be jointly and severally liable for all of the fee agreement's obligations.

Ponist later claimed that Nationwide and Lipsky failed to pay about $200,000 in fees. In June 2018, Ponist filed a demand for arbitration with AAA. The parties could not agree on an arbitrator. In October 2018, Ponist filed a petition in San Francisco Superior Court to have the court appoint an arbitrator. Ponist served this petition by mailing it and emailing it to Lipsky and three different attorneys for Nationwide and Lipsky. A few days later, Ponist transmitted another copy by overnight delivery to one of the attorneys for Nationwide and Lipsky and emailed copies to two of their attorneys. Ponist also had the petition personally served on Nationwide's counsel in California and Ohio. Ponist relied on rule R-43 of AAA's Commercial Arbitration Rules, which permits service on a party by mail, personal service,

4

or overnight delivery to the party or its representative, so long as the party receives a reasonable opportunity to be heard.

Nationwide and Lipsky objected that they had not been served with the petition by registered or certified mail and that LPA and Lipsky had not received any notice of the petition. The trial court ultimately overruled their objections to service and in January 2019 appointed an arbitrator and two backups. Nationwide and Lipsky filed a petition for writ of mandate challenging this order, and we summarily denied it. (*Nationwide Biweekly Administration, Inc. v. Superior Court* (Feb. 15, 2019, A156451) [nonpub. opn.].)

The arbitration was heard in September 2019. Among other arguments, Lipsky contended he was not personally liable for Ponist's fees because the provision making him liable was slipped into the agreement and he did not know what he was signing. In January 2020, the arbitrator rejected this and other arguments, found in Ponist's favor, and awarded Ponist about $200,000 in fees and interest.

Nationwide and Lipsky filed a petition to vacate the award based on improper service of Ponist's petition to appoint the arbitrator. Lipsky also argued the award against him was void because the first addendum violated public policy. More specifically, Lipsky argued Ponist violated the Rules of Professional Conduct by failing to disclose the joint and several liability clause in the first addendum and the conflict of interest that clause created, and not advising Lipsky of the need to have independent counsel review the agreement. The trial court

5

denied Nationwide and Lipsky's petition and entered judgment confirming the award.

## DISCUSSION

The California Arbitration Act (CAA) "is 'a comprehensive statutory scheme regulating private arbitration in this state.' [Citation.] 'Through this detailed statutory scheme, the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' [Citation.] To effectuate that policy, the CAA provides that '[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' [Citation.] Where, as here, an arbitrator has issued an award, the decision is ordinarily final and thus 'is not ordinarily reviewable for error by either the trial or appellate courts.' [Citation.] The exceptions to this rule of finality are specified by statute. As relevant here, the CAA provides that a court may vacate an arbitration award when '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' " (*Sheppard Mullin, supra*, 6 Cal.5th at p. 72.)

## I. Service of petition to appoint an arbitrator

Nationwide and Lipsky first contend that the trial court erred by rejecting their argument that Ponist failed to properly serve Nationwide and Lipsky with the petition to appoint an arbitrator. Nationwide and Lipsky do not base this argument

upon a specific statutory exemption to the finality of the arbitrator's award, but we construe it as a contention that the arbitrator exceeded her powers because she was not properly appointed to begin with.

Nationwide and Lipsky's service argument turns on the terms of the fee agreement and sections 1290 and 1290.4 of the Code of Civil Procedure[3]. Section 1290 states that "[a] proceeding under [the CAA] in the courts of this State is commenced by filing a petition." Section 1290.4, subdivision (a) provides, "A copy of the petition and a written notice of the time and place of the hearing thereof and any other papers upon which the petition is based shall be served in the manner provided in the arbitration agreement for the service of such petition and notice." Subdivision (b)(2) of the same section further states, "If the arbitration agreement does not provide the manner in which such service shall be made and the person upon whom service is to be made has not previously appeared in the proceeding and has not previously been served in accordance with this subdivision: [¶] . . . [¶] Service outside this State shall be made by mailing the copy of the petition and notice and other papers by registered or certified mail. Personal service is the equivalent of such service by mail. Proof of service by mail shall be made by affidavit showing such mailing together with the return receipt of the United States Post Office bearing the signature of the person on whom service was made. Notwithstanding any other provision of

---

[3] Subsequent undesignated statutory citations are to the Code of Civil Procedure.

this title, if service is made in the manner provided in this paragraph, the petition may not be heard until at least 30 days after the date of such service."

The trial court ruled that Ponist properly served Nationwide and Lipsky by mailing the petition because section 1290.4, subdivision (a) permits service "in the manner provided in the arbitration agreement," the fee agreement states that "the arbitration shall be conducted pursuant to" AAA's rules, and rule R-43 of AAA's rules permits service by mail or personal service on a party or its representatives for "any court action in connection" with an arbitration. We agree with this straightforward application of the relevant authorities.

Nationwide and Lipsky's argument against the trial court's ruling is more intricate. They begin by noting that while the fee agreement specifies that AAA's rules govern the arbitration process, it requires the trial court to appoint an arbitrator if the parties cannot agree. They point out that AAA rule R-12(b) states that if the parties cannot agree on an arbitrator, AAA can appoint an arbitrator. Nationwide and Lipsky argue that by requiring the trial court to appoint an arbitrator, the fee agreement imposes a specific provision that conflicts with and controls over the more general provision in the agreement requiring the parties to follow AAA's rules, including rule R-12(b) for appointing an arbitrator. Nationwide and Lipsky further argue that the fee agreement provision requiring a trial court to appoint an arbitrator likewise controls over other general rules applicable to the same subject of arbitrator appointment, such as

8

rule R-43's provision for service of process as it relates to a petition to appoint an arbitrator.

This argument is not persuasive. At the outset, the fee agreement's provision requiring the trial court to appoint an arbitrator when the parties cannot agree on one is consistent with and does not contradict AAA's rules. Nationwide and Lipsky ignore the first sentence of rule R-12, which states that AAA will appoint an arbitrator when the parties cannot agree on one only if the parties "have not provided any other method of appointment." The fee agreement's provision requiring a court to appoint an arbitrator provides another method and is therefore consistent with AAA's rules. Contrary to Nationwide and Lipsky's argument, it is not a more specific provision that conflicts with AAA's general rules.

In addition, while Nationwide and Lipsky are correct that a specific provision in a contract will control over a general one (§ 1859), AAA's rules are more specific in this instance. Rule R-43 states that its provisions governing service of process apply to "[a]ny papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, *for any court action in connection therewith,* or for the entry of judgment on any award made under these rules." (Italics added.) The question here concerns service of a document in a court action connected with an arbitration, so rule R-43 directly controls. There is no basis for reading the fee agreement's appointment provision as impliedly extending to service of

9

process when AAA's rules, which the fee agreement makes applicable, already address the issue.

Citing *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12, Nationwide and Lipsky argue that our Supreme Court has prohibited arbitration agreements from imposing on court proceedings *outside* of the arbitration those conditions that were agreed upon *within* the arbitration. Nationwide and Lipsky misread the case on which they rely. *Cable Connection Inc.* expressly declined to consider whether a contract could require judicial review of an arbitration award to be governed by the Federal Arbitration Act rather than the CAA, holding that the appellant there failed to raise the argument in the trial court. (*Ibid.*)

Nationwide and Lipsky also raise several subsidiary arguments related to service, but none requires much discussion. They argue they did not knowingly waive their rights under section 1290.4, subdivision (b)(2) to service of process by certified or registered mail and 30 days' time to respond. But they signed the fee agreement, which incorporated by reference AAA's rules for service, so they did waive their rights under the statute. Relatedly, they argue that *Mercuri v. Ligar* (1964) 225 Cal.App.2d 240, 241 requires a fee agreement to "expressly" identify the manner of service rather than incorporate rule R-43(a)'s definition of service. *Mercuri* stated only that the contract there did not address service, so the statutory rules for service controlled. (*Ibid.*) *Mercuri* gave no indication that the contract incorporated by reference an arbitrator's rules for service, so the

10

court could not have held such incorporation was insufficient. (*Ibid.*)

Nationwide and Lipsky contend the trial court improperly required them to prove the absence of a waiver rather than requiring Ponist to prove a waiver. The trial court noted that Nationwide and Lipsky had failed to point to any rules that might apply other than rule R-43, but it did so only after Ponist had argued that rule R-43 applied and the trial court had given Nationwide and Lipsky an opportunity to respond. The trial court did not improperly shift the burden.

Finally, Nationwide and Lipsky argue the improper service of process means the trial court did not have personal jurisdiction over them. Aside from the fact that service was proper, service was not necessary to establish personal jurisdiction here. "When parties agree to California arbitration, they consent to submit to the personal jurisdiction of California courts to enforce the agreement and any judgment under section 1293." (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 144.) Personal jurisdiction is therefore not at issue here.[4]

---

[4] In its reply brief, Nationwide and Lipsky argue for the first time that even if rule R-43(a) governs here, service was improper because that rule only allows service by mail on the party or its representative if the recipient has a "reasonable opportunity to be heard." They assert that the 10 days they received to respond to Ponist's petition to appoint an arbitrator was unreasonable because it is less than the 30 days set in section 1290.4, subdivision (b)(2). They forfeited this argument by failing to raise it in their opening brief, and we will not

## II. Lipsky's personal liability for fees

Lipsky argues the award against him personally must be vacated because his fee agreement with Ponist violated the Rules of Professional Conduct and is therefore voidable. He also argues the trial court erred when it considered the agreement's legality by deferring to the arbitrator's factual findings instead of independently examining the evidence.

As noted *ante*, the exceptions to the finality of an arbitration award that permit the vacation of the award are set by statute and include the situation when "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.2, subd. (a)(4); *Sheppard Mullin, supra*, 6 Cal.5th at p. 72.) "[T]he excess-of-authority exception applies, and an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal and against the public policy of the state.'" (*Sheppard Mullin,* at p. 73.) Public policy for these purposes includes the Rules of Professional Conduct that govern attorney fee agreements, so a "violation of a Rule of Professional Conduct in the formation of a contract can render the contract unenforceable as against public policy." (*Id.* at pp. 73–74, 87.) However, "the case law does not establish" and the Supreme Court has not held "that an attorney-services contract may be declared illegal in its entirety simply because it contains a

---

address it. (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (2022) 77 Cal.App.5th 971, 982.)

12

provision that conflicts with an attorney's obligations under the Rules of Professional Conduct." (*Id.* at p. 79.) "It is only when 'the illegality taints the entire contract' that courts may declare 'the entire transaction is illegal and unenforceable.' " (*Id.* at p. 80.)

A trial court must independently review a claim that an arbitration award based on a contract should be vacated because the entire contract is illegal and unenforceable. (*Lindenstadt*, *supra*, 55 Cal.App.4th at pp. 888–889, 893.) The trial court "should consider all of the admissible evidence submitted to it regardless of whether that evidence was before the arbitrator," as well as "the arbitration award itself, including the testimony and other evidence described therein." (*Id.* at p. 893, fn. 8.) An appellate court independently reviews a trial court's ruling on illegality of the contract but applies the substantial evidence test to any rulings on disputes of fact the trial court may have made. (*Id.* at p. 892, fn. 7.)

Lipsky contends the trial court improperly deferred to the arbitrator's factual findings that he signed the fee agreement and that Ponist sent the agreement to Nationwide's counsel to review. Lipsky is correct that the trial court should have conducted an independent review of the evidence regarding illegality, rather than deferring to the arbitrator's factual rulings as it appears to have done. (*Lindenstadt, supra*, 55 Cal.App.4th at pp. 888–889.) But the trial court's improper deference to the arbitrator did not affect the result in this case. The record shows that Ponist sent the first and second addenda to Nationwide's counsel for review

13

and Lipsky signed them. Lipsky never argues that the arbitrator's findings were incorrect or cites any evidence to contradict them. Moreover, even if we accept Lipsky's argument that the inclusion of the joint and several liability provision in the fee agreement violated the Rules of Professional Conduct, Lipsky has not shown that the inclusion of the provision would make the fee agreement unenforceable in its entirety.[5]

Lipsky contends the provisions in the first and second addenda making Nationwide and Lipsky jointly and severally liable for Ponist's fees violated former rule 3-310 of the Rules of Professional Conduct. That rule governed conflicts of interest and prohibited an attorney from accepting or continuing representation of more than one client in which the interests of the clients potentially or actually conflicted without obtaining the clients' informed consent. Lipsky also cites former rule 3-500, which required an attorney to keep a client reasonably informed about significant developments relating to the representation. He argues that Ponist violated these provisions by

---

[5] The trial court denied Lipsky's petition to vacate the arbitration award because the award did not violate Lipsky's unwaivable statutory rights. Lipsky argues the trial court should have found the fee agreement was unenforceable for violating public policy in the form of the Rules of Professional Conduct. These appear to be separate exceptions to the finality of arbitration awards. (*Sheppard Mullin*, *supra*, 6 Cal.5th at pp. 77–78 [describing the statutory rights exception as a "different subject" from the public policy exception]; but see *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405, 1417, fn. 1 [seeing "some overlap" between the exceptions].) Because Lipsky limits his argument here to the public policy exception, so do we.

14

misrepresenting the first addendum as addressing only conflicts of interest and the second as modifying retainer deposits and an attorney's hourly rate, without disclosing that both made the clients jointly and severally liable for all fees, including those pre-dating the execution of the addenda. Lipsky contends the joint and several liability provision created an actual, undisclosed conflict of interest between Nationwide and Lipsky, as well as between Ponist and the clients, and deprived Lipsky of unspecified "disclosure[s] about his corporate indemnity rights." Lipsky also faults Ponist for not explaining any of this to him.

We will assume for the sake of argument that Lipsky is correct that Ponist violated the former Rules of Professional Conduct by including the joint and several liability provision in the fee agreement. But, as noted previously, our Supreme Court has made clear that a violation of the Rules of Professional Conduct is not always grounds to declare an entire contract unenforceable. (*Sheppard Mullin*, *supra*, 6 Cal.5th at pp. 79–80.) Rather, "[i]t is only when 'the illegality taints the entire contract' that courts may declare 'the entire transaction is illegal and unenforceable.' " (*Id.* at p. 80.) The violation of the former Rules of Professional Conduct identified by Lipsky does not render the entire fee agreement illegal.

*Sheppard Mullin* held that a law firm's failure to disclose and obtain consent to an actual conflict of interest between current clients made the firm's fee agreement unenforceable in its entirety because the "transaction . . . undermined an ethical rule designed for the protection of the client as well as for the

15

preservation of public confidence in the legal profession." (*Sheppard Mullin*, *supra*, 6 Cal.5th at p. 87.)  The court cited two cases in which courts refused to enforce fee-sharing agreements between lawyers because the purpose of the agreements violated Rules of Professional Conduct requiring the client's informed consent.  (*Ibid.*, citing *Chambers v. Kay* (2002) 29 Cal.4th 142, 159 and *Altschul v. Sayble* (1978) 83 Cal.App.3d 153, 164.)

By contrast, *Sheppard Mullin* cited several cases in which the Supreme Court had held that violations of the Rules of Professional Conduct did not preclude enforcement of a contract as a whole.  (*Sheppard Mullin*, *supra*, 6 Cal.5th at pp. 79–80.) *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 30, 32–33 (*Moncharsh*) held that a fee-splitting provision in an employment agreement between a lawyer and law firm did not make the entire contract unenforceable so as to defeat an arbitration award based on the contract.  *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 137–139 (*Birbrower*) held that a law firm could enforce its fee agreement for services performed in New York, even though it could not obtain fees under the agreement for work performed in California in violation of the statutory bar on the unauthorized practice of law. *Calvert v. Stoner* (1948) 33 Cal.2d 97, 103–105 (*Calvert*) held that a provision in a fee agreement preventing the client from settling without the lawyer's consent did not prevent the lawyer from enforcing the rest of the fee agreement.

The joint and several liability provision at issue here is more similar to the violations found not to invalidate entire

16

contracts in *Moncharsh, Birbrower,* and *Calvert* than the actual conflict of interest between the firm's two current clients that resulted in the invalidation of the entire agreement in *Sheppard Mullin.* The provision did not create an actual conflict of interest between Nationwide and Lipsky like the clients in *Sheppard Mullin* because there is no evidence that the provision made either Lipsky or Nationwide liable for fees they would not otherwise have owed. It appears Nationwide paid all of Ponist's fees until the end of the representation in 2017, so there was no retroactive liability. Ponist's work for Nationwide also appears to have overlapped completely with its work for Lipsky. Lipsky was the founder, president, sole officer, and sole shareholder of NBA. (*Nationwide Biweekly Administration, Inc. v. Owen*, *supra*, 873 F.3d at p. 721, fn. 1; *Consumer Financial Protection Bureau v. Nationwide Biweekly Administration, Inc.*, *supra*, 2017 U.S. Dist. LEXIS 145923, at *1.) LPA is a wholly-owned subsidiary of NBA, and Lipsky served as LPA's managing member. (*Ibid.*) Lipsky was named personally in at least two of the lawsuits against Nationwide. (*Ibid.*; *Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, *supra*, 9 Cal.5th at p. 294.) Lipsky was alleged in at least one suit to be Nationwide's alter ego, making those claims against Nationwide equivalent to claims against him. (*Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, *supra*, 9 Cal.5th at p. 294.) Given the commonality of interest between Lipsky and Nationwide and their roles in the litigation, it is logical to assume that Ponist's work applied equally to all three clients. Lipsky

17

certainly has not offered any evidence that Ponist's work for Nationwide was separate from its work for him, despite Ponist raising this issue in its respondent's brief.

The joint and several liability provision may have advantaged Ponist relative to Lipsky to the extent that it prevented Lipsky from using Nationwide's insolvency to avoid liability for Ponist's fees. But unlike in *Chambers v. Kay* and *Altschul v. Sayble*, where the entire object of the agreements between attorneys to split fees was illegal, the joint and several liability provision did not make the entire object of Ponist's fee agreement illegal. As with the fee-splitting provision in *Moncharsh* and the consent to settlement provision in *Calvert v. Stoner*, Ponist's ability to invoke the provision in a potential insolvency scenario did not affect the substance of Ponist's work on a day-to-day level while its representation of Nationwide and Lipsky continued. The provision did not affect Ponist's loyalty to Lipsky and Nationwide relative to each other or any third parties, nor did it call into question the value of the services Ponist provided. The provision also does not appear to have been inserted in bad faith, notwithstanding Lipsky's allegation that Ponist did not raise it to his attention, since model fee agreements published by the State Bar contained an identical provision. The joint and several liability provision is mentioned in neither the instructions for the model fee agreement nor the related model disclosure for conflicts of interest arising from joint representation.

18

Lipsky cites several cases that he claims support the proposition that a violation of an attorney's disclosure obligations under the Rules of Professional Conduct renders a fee agreement voidable at the client's election, but his reliance on these cases is misplaced. *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1005–1006, held, consistent with the Supreme Court's later holding in *Sheppard Mullin*, that a violation of the Rules of Professional Conduct does *not* automatically make a fee agreement voidable. *Pringle* further construed Supreme Court precedent as suggesting that "there must be a serious violation of the attorney's responsibilities before an attorney who violates an ethical rule is required to forfeit fees." (*Id.* at p. 1006.) *Pringle* declined to hold the fee agreement there entirely unenforceable because the client had not provided a sufficient record to demonstrate whether the attorney's violation was serious. (*Ibid.*) *Pringle* is consistent with our conclusion that Lipsky has not shown that Ponist's alleged violation of the Rules of Professional Conduct was serious enough to invalidate the entire fee agreement.

*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1142–1144 is factually distinguishable, as the attorney's conduct there was "fundamentally at war" with the rules prohibiting attorneys from entering into business dealings with their clients without disclosure and consent. (*Id.* at p. 1169.) *BGJ Associates v. Wilson* (2003) 113 Cal.App.4th 1217, 1226 is similarly inapposite. The attorney in that case violated the Rules of Professional Conduct by forming a joint venture with a client to buy a

19

property, and the joint venture was "inextricably intertwined" with the attorney's representation of the client in a suit to obtain a prescriptive easement on the same property. (*Ibid.*) In both of these cases, the attorneys' conduct amounted to undue influence over their clients. (*Fair*, at pp. 1155–1156; *BGJ*, at p. 1228.) By comparison, the joint and several liability provision did not affect Ponist's entire relationship with Lipsky or Nationwide, nor did it constitute undue influence. It merely created the potential for a conflict over who would pay Ponist's fees if Nationwide were unable or if Ponist performed some work that was not equally for the benefit of all the clients (only the former of which came to pass).

Because Ponist's asserted violation of the Rules of Professional Conduct with respect to the joint and several liability provision did not infect the entire fee agreement between Ponist and Lipsky, the fee agreement as a whole is not invalid. It therefore follows that the trial court correctly denied Lipsky's motion to vacate the arbitration award against Lipsky based on the fee agreement. This is so even though the arbitrator enforced the agreement against Lipsky personally, thereby perhaps enforcing the same provision Lipsky contends is in violation of the Rules of Professional Conduct.[6] If a contract as a whole is

---

[6] We say "perhaps" because Lipsky has not shown that the joint and several liability provision was necessarily the basis for the arbitrator's joint and several award against him and Nationwide. Because Ponist's work appears to have been equally for the benefit of Lipsky and Nationwide, Lipsky may have been liable for all of Ponist's fees even in the absence of the joint and several liability clause.

valid, then judicial review of an arbitrator's resolution of an argument that a clause of the contract is illegal is unavailable, even if an arbitrator makes errors of fact or law that cause substantial injustice to the parties. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 6, 32–33; *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*, *supra*, 187 Cal.App.4th at pp. 1417, fn. 1, 1418 [refusing to review arbitrator's award of an allegedly unconscionable fee under fee agreement].)

## DISPOSITION

The judgment is affirmed.

BROWN, J.

WE CONCUR:

STREETER, ACTING P. J.
NADLER, J.[*]

*Ponist Law Group, P.C., et al. v. Nationwide Biweekly Administration, Inc., et al.*
(A160798)

---

[*] Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21